| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| JAMES W. BATES (SBN 143757)<br>LAW OFFICES OF JAMES W. BATES,<br>A PROFESSIONAL CORPORATION<br>2418 Honolulu Avenue, Suite J<br>Montrose, California 91020-1842<br>(818) 248-1911 Telephone (818) 279-0513 Facsimile jbates@jbateslaw.com<br><br>☐ *Individual appearing without counsel*<br>☒ *Attorney for:* UNITED CENTRAL BANK | **FILED**<br><br>**DEC 3 0 2010**<br><br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: _____ Deputy Clerk |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| In re:<br><br>TEAM MINISTRY GROUP, LLC<br><br><br><br>Debtor(s). | CHAPTER: 7 |
|---|---|
| | CASE NO.: 2:09-12291-PC |
| | DATE: 1/27/11<br>TIME: 9:30 am<br>CTRM: 1575<br>FLOOR: 15th |

## NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### UNDER 11 U.S.C. § 362 (with supporting declarations)
### (MOVANT:  UNITED CENTRAL BANK                    )
### (Real Property)

1.  NOTICE IS HEREBY GIVEN to the Debtor(s) and Trustee (if any)("Responding Parties"), their attorneys (if any), and other interested parties that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate on the grounds set forth in the attached Motion.

2.  **Hearing Location:**   ☒ **255 East Temple Street, Los Angeles**      ☐ **411 West Fourth Street, Santa Ana**

    ☐ **21041 Burbank Boulevard, Woodland Hills**      ☐ **1415 State Street, Santa Barbara**

    ☐ **3420 Twelfth Street, Riverside**

3.  a.  ☒  This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1.  If you wish to oppose this Motion, you must file a written response to this Motion with the Bankruptcy Court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and appear at the hearing of this Motion.

    b.  ☐  This Motion is being heard on SHORTENED NOTICE.  If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence may be filed and served:

    ☐ at the hearing      ☐ at least _____ court days before the hearing.

    (1)  ☐  A Motion for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

    (2)  ☐  A Motion for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court and such motion and order have been or are being served upon the debtor and trustee, if any.

    (3)  ☐  A Motion for Order Shortening Time has been filed and remains pending. Once the Court has ruled on that Motion, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion.

4.  You may contact the Bankruptcy Clerk's Office to obtain a copy of an approved court form for use in preparing your response *(Optional Court Form F 4001-1M.RES)*, or you may prepare your response using the format required by Local Bankruptcy Rule 9004-1 and the Court Manual.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

December 2009

**F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 2 of* 195      **F 4001-1M.RP**

| In re          (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| TEAM MINISTRY GROUP, LLC | |
| Debtor(s). | CASE NO.: 2:09-12291-PC |

5.   If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

Dated: 12/20/10

LAW OFFICES OF JAMES W. BATES, APC
*Print Law Firm Name (if applicable)*

JAMES W. BATES
*Print Name of Individual Movant or Attorney for Movant*

*Signature of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Real Property) - *Page 3 of* 195      **F 4001-1M.RP**

| In re                              (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| TEAM MINISTRY GROUP, LLC                                    Debtor(s). | CASE NO.: 2:09-12291-PC |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### (MOVANT:  UNITED CENTRAL BANK                                   )

1. **The Property at Issue:** Movant moves for relief from the automatic stay with respect to following real property (the "Property"):

    *Street Address:* 72 Hacienda Road
    *Apartment/Suite No.:*
    *City, State, Zip Code:* Newbury Springs, California 92365

    Legal description or document recording number (including county of recording):
    Legal description is attached as Exhibit "A"; Deed Of Trust (2008-0002243) is attached hereto as Exhibit "B"
    ☐ See attached continuation page.

2. **Case History:**
    a. ☒ A voluntary ☐ An involuntary   petition under Chapter   ☐ 7 ☐ 11 ☒ 12 ☐ 13
       was filed on *(specify date):* 2/3/09
    b. ☒ An Order of Conversion to Chapter   ☒ 7 ☐ 11 ☐ 12 ☐ 13
       was entered on *(specify date):* 4/9/09
    c. ☐ Plan was confirmed on *(specify date):*
    d. ☐ Other bankruptcy cases affecting this Property have been pending within the past two years.  See attached Declaration.

3. **Grounds for Relief from Stay:**
    a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:
       (1) ☒ Movant's interest in the Property is not adequately protected.
           (a) ☒ Movant's interest in the collateral is not protected by an adequate equity cushion.
           (b) ☒ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.
           (c) ☒ No proof of insurance re Movant's collateral has been provided to Movant, despite borrower(s)'s obligation to insure the collateral under the terms of Movant's contract with Debtor(s).
           (d) ☐ Payments have not been made as required by an Adequate Protection Order previously granted in this case.
       (2) ☐ The bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.
           (a) ☐ Movant is the only creditor or one of very few creditors listed on the master mailing matrix.
           (b) ☐ Non-individual entity was created just prior to bankruptcy filing for the sole purpose of filing bankruptcy.
           (c) ☐ The Debtor(s) filed what is commonly referred to as a "face sheet" filing of only a few pages consisting of the Petition and a few other documents.  No other Schedules or Statement of Affairs (or Chapter 13 Plan, if appropriate) have been filed.
           (d) ☐ Other (See attached continuation page).

*(Continued on next page)*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                                  **F 4001-1M.RP**

| In re                     (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| TEAM MINISTRY GROUP, LLC | |
| Debtor(s). | CASE NO.: 2:09-12291-PC |

      (3) ☐  *(Chapter 12 or 13 cases only)*

         (a) ☐  Postconfirmation plan payments have not been made to the Standing Trustee.

         (b) ☐  Postconfirmation payments required by the confirmed plan have not been made to Movant.

      (4) ☐  For other cause for relief from stay, see attached continuation page.

b. ☒  Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor(s) has/have no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

c. ☐  Pursuant to 11 U.S.C. § 362(d)(3), Debtor(s) has/have failed within the later of 90 days after the petition or 30 days after the court determined that the Property qualifies as single asset real estate to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐  Pursuant to 11 U.S.C. § 362(d)(4), Debtor's(s) filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved:

      (1) ☐  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

      (2) ☐  Multiple bankruptcy filings affecting the Property.

4. ☒  Movant also seeks annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).   *See page 20 hereto.*

5. **Evidence in Support of Motion:** *(Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)*

a. ☒  Movant submits the attached Declaration(s) on the Court's approved forms (if applicable) to provide evidence in support of this Motion pursuant to Local Bankruptcy Rules.

b. ☒  Other Declaration(s) are also attached in support of this Motion. *See attached Decs. of Christopher Chen and James W. Bates*

c. ☐  Movant requests that the Court consider as admissions the statements made by Debtor(s) under penalty of perjury concerning Movant's claims and the Property set forth in Debtor(s)'s Schedules: Authenticated copies of the relevant portions of the Schedules are attached as Exhibit _____.

d. ☒  Other evidence *(specify)*:
    See attached Exhibits "A" through "I"

6. ☐  **An optional Memorandum of Points and Authorities is attached to this Motion.**

**WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following *(specify forms of relief requested)*:**

1. Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2. ☐  Annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

3. ☒  Additional provisions requested:

      a. ☐  That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

      b. ☒  That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

      c. ☐  That Extraordinary Relief be granted as set forth in the Attachment *(attach Optional Court Form F 4001-1M.ER)*.

Motion for Relief from Stay (Real Property) - *Page 5 of* __195__     **F 4001-1M.RP**

| In re                         (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| TEAM MINISTRY GROUP, LLC                         Debtor(s). | CASE NO.: 2:09-12291-PC |

    d.  ☐  For other relief requested, see attached continuation page.

4.  If relief from stay is not granted, Movant respectfully requests the Court to order adequate protection.

Dated: 12/20/10

Respectfully submitted,

UNITED CENTRAL BANK
*Movant Name*

LAW OFFICES OF JAMES W. BATES, APC
*Firm Name of Attorney for Movant (if applicable)*

By:
*Signature*

Name:  JAMES W. BATES
*Typed Name of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Real Property) - *Page 6 of* __195__    **F 4001-1M.RP**

| In re                    (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| TEAM MINISTRY GROUP, LLC | |
|                                              Debtor(s). | CASE NO.: 2:09-12291-PC |

## REAL PROPERTY DECLARATION
### (MOVANT:  UNITED CENTRAL BANK                    )

I, RASHID MEMON _____, declare as follows:

*(Print Name of Declarant)*

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion ("Property") because *(specify)*:

   ☐ I am the Movant and owner of the Property.

   ☐ I manage the Property as the authorized agent for the Movant.

   ☒ I am employed by Movant as *(state title and capacity)*: Vice President

   ☐ Other *(specify)*:

2. I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor(s) concerning the Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

3. a. The address of the Property that is the subject of this Motion is:

   *Street Address:* 72 Hacienda Road
   *Apartment/Suite No.:*
   *City, State, Zip Code:* Newbury Springs, California 92365

   b. The legal description or document recording number (including county of recording) set forth in Movant's Deed of Trust is attached as Exhibit A and C .

   ☐ See attached page.

4. Type of property *(check all applicable boxes)*:

   a. ☐ Debtor's(s') principal residence   b. ☐ Other single family residence

   c. ☐ Multi-unit residential           d. ☒ Commercial

   e. ☐ Industrial                       f. ☒ Vacant land

   g. ☐ Other *(specify)*:

*(Continued on next page)*

December 2009                                                    **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 7 of* 195    **F 4001-1M.RP**

| In re (SHORT TITLE)<br>TEAM MINISTRY GROUP, LLC<br>Debtor(s). | CHAPTER: 7<br>CASE NO.: 2:09-12291-PC |
| --- | --- |

5. Nature of Debtor's(s') interest in the Property:

   a.  ☐ Sole owner

   b.  ☒ Co-owner(s) *(specify)*: Debtor owns a 25% interest in the Property.

   c.  ☐ Lien holder *(specify)*:

   d.  ☐ Other *(specify)*:

   e.  ☐ Debtor(s)  ☐ did  ☐ did not  list the Property in the Schedules filed in this case.

   f.  ☒ Debtor(s) acquired the interest in the Property by  ☒ grant deed  ☐ quitclaim deed  ☐ trust deed

       The deed was recorded on:  1/3/08

6. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
| --- | --- | --- | --- | --- |
| a. | Principal: | $ | $ 3,474,455.35 | $ 3,474,455.35 |
| b. | Accrued Interest: | $ | $ 437,319.18 | $ 437,319.18 |
| c. | Late Charges | $ | $ | $ |
| d. | Costs (Attorney's Fees, Other Costs): | $ | $ | $ |
| f. | Advances (Property Taxes, Insurance): | $ | $ | $ |
| g. | TOTAL CLAIM as of 12/20/09 : | $ | $ 3,911,774.53 | $ 3,911,774.53 |

   h.  ☒ Loan is all due and payable because it matured on *(specify date)*: 6/20/09

7. Movant holds a ☒ deed of trust  ☐ judgment lien  ☒ other *(specify)* Assignment Of Leases And Rents
that encumbers the Property.

   a.  A true and correct copy of the document as recorded is attached as Exhibit "C" "D" .

   b.  A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit "B" .

   c.  ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit _____.

8. Status of Movant's claim relating to the Property *(fill in all applicable information requested below)*:

   a.  Current interest rate: 7.00%

   b.  Contractual maturity date: 12/30/08

   c.  Amount of current monthly payment:  $ 20,943.24

   d.  Number of PREPETITION payments that have come due and were not made:  0  . Total amount: $ 0.00

   e.  Number of POSTPETITION payments that have come due and were not made:  21  . Total amount: $ 437,319.18

   f.  Date of POSTPETITION default: 4/20/09

   g.  Last payment received on the following date:  3/20/09

   h.  Notice of default recorded on the following date:

   i.  Notice of sale recorded on the following date:

   j.  Foreclosure sale originally scheduled for the following date:

   k.  Foreclosure sale currently scheduled for the following date:

   l.  Foreclosure sale already held on the following date:

   m.  Trustee's deed on sale already recorded on the following date:

   n.  Future payments due by time of anticipated hearing date *(if applicable)*:
An additional payment of $ 20,943.24 will come due on  1/20/11 , and on the  20th  day of each month thereafter.  If the payment is not received by the _____ day of the month, a late charge of $_____ will be charged to the loan.

9. Attached hereto as Exhibit  G  is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor(s) since the petition date.

*December 2009*    **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 8 of* 195    **F 4001-1M.RP**

| In re                    (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| TEAM MINISTRY GROUP, LLC | |
| Debtor(s). | CASE NO.: 2:09-12291-PC |

10. ☒ *(Chapter 7 and 11 cases only):*  The fair market value of the entire Property is $ 1,800,000.00 _____, established by:

   a. ☒ Appraiser's declaration with appraisal attached herewith as Exhibit "I" _____. Dec. of Chen $1,800,000

   b. ☐ A real estate broker or other expert's declaration regarding value attached as Exhibit _____.

   c. ☐ A true and correct copy of relevant portion(s) of Debtor's(s') Schedules attached as Exhibit _____.

   d. ☒ Other *(specify):* The Chapter 7 Trustee $2,000,000

11. ☒ The fair market value of the Property is declining based on/due to: Economy, potential uses of the Property _____

12. ☒ **Calculation of equity in Property:**

   a. Based upon  ☐ preliminary title report  ☒ Debtor's(s') admissions in the schedules filed in this case,  the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor(s) (if any) | Amount Known to Declarant and Source |
|---|---|---|---|
| 1st Deed of Trust: | United Central Bank | $3,475,000.00 | $3,911,774.53 |
| 2nd Deed of Trust: | CalTop Realty & Investments | $75,000.00 | |
| 3rd Deed of Trust: | D. Marie Battle | $750,000.00 | |
| Judgment Liens: | | | |
| Taxes: | | | |
| Other: | | | |

| **TOTAL DEBT:  $** 4,736,774.53 |
|---|

   b. Evidence establishing the existence of the above deed(s) of trust and lien(s) is attached as Exhibit "F" _____, and consists of:

      ☐ Preliminary title report

      ☒ Relevant portions of Debtor's(s') Schedules as filed in this case

      ☐ Other *(specify):*

   c. Subtracting the deed(s) of trust and other lien(s) set forth above from the value of the Property as set forth in Paragraph 10 above, the Debtor's(s') equity in the Property is $ 0.00 _____ (§ 362(d)(2)(A)).

   d. The value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant is $0.00 _____ (§ 362(d)(1)).

   e. Estimated costs of sale: $ 39,117.74 _____    (Estimate based upon 1 ___ % of estimated gross sales price)

13. ☐ *(Chapter 12 and 13 cases only)* Chapter 12 or 13 case status information:

   a. 341(a) Meeting currently scheduled for (or concluded on) the following date:
Confirmation hearing currently scheduled for (or concluded on) the following date:
Plan confirmed on the following date *(if applicable):*

   b. Postpetition/preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| *(Number of)* _____ payment(s) due at $_____ | each | = | $_____ |
|---|---|---|---|
| *(Number of)* _____ payment(s) due at $_____ | each | = | $_____ |
| *(Number of)* _____ late charge(s) at  $_____ | each | = | $_____ |
| *(Number of)* _____ late charge(s) at  $_____ | each | = | $_____ |

*(Continued on next page)*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Real Property) - *Page 9 of* |95    **F 4001-1M.RP**

| In re                    (SHORT TITLE) | CHAPTER:  7 |
|---|---|
| TEAM MINISTRY GROUP, LLC<br><br>                                              Debtor(s). | CASE NO.:  2:09-12291-PC |

c.   Postpetition/preconfirmation advances or other charges due but unpaid:                $_____
     (See attachment for details of type and amount.)

                    **TOTAL POSTPETITION/PRECONFIRMATION DELINQUENCY:**    $_____

d.   Postconfirmation payments due BUT REMAINING UNPAID since plan confirmation *(if applicable)*:

       *(Number of)* _____ payment(s) due at $_____ each   =   $_____
       *(Number of)* _____ payment(s) due at $_____ each   =   $_____
       *(Number of)* _____ late charge(s) at  $_____ each   =   $_____
       *(Number of)* _____ late charge(s) at  $_____ each   =   $_____

e.   Postconfirmation advances or other charges due but unpaid:                $_____
     (See attachment for details of type and amount.)

                    **TOTAL POSTCONFIRMATION DELINQUENCY:**        $_____

f.   ☐   The claim is provided for in the Chapter 12 or 13 Plan.  Plan payment history is attached as Exhibit _____.

g.   ☐   See attached Declaration(s) of Chapter 12 or 13 Trustee regarding receipt of payments under the plan *(attach Court Form F 4001-1M.13).*

14. ☒   Movant has not been provided with evidence that the Property is currently insured, as required under the terms of the loan.

15. ☐   The court determined that the Property qualifies as single asset real estate on _____.  More than 90 days have passed since the filing of the petition, more than 30 days have passed since the court determined that the Property qualifies as single asset real estate, the Debtor(s) has/have not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time  or the Debtor(s) has/have not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

16. ☐   See attached continuation page for facts establishing that the bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.

17  ☐   The filing of the petition was part of a scheme to delay, hinder and defraud creditors that involved:

   a.   ☐   The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval.  See attached continuation page for facts establishing the scheme.

   b.   ☐   Multiple bankruptcy filings affecting the Property.  The multiple bankruptcy filings include the following cases:
        1.   Case Name:
             Case Number:                          Chapter:
             Date Filed:                               Date Dismissed:                         Date Discharged:
             Relief from stay re this property    ☐  was     ☐  was not  granted.
        2.   Case Name:
             Case Number:                          Chapter:
             Date Filed:                               Date Dismissed:                         Date Discharged:
             Relief from stay re this property    ☐  was     ☐  was not  granted.
        3.   ☐   See attached continuation page for more information about other bankruptcy cases affecting the Property.

   ☐   See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, and defraud creditors.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

| In re                            (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| TEAM MINISTRY GROUP, LLC | |
| Debtor(s). | CASE NO.: 2:09-12291-PC |

18. ☐ Movant seeks annulment of the automatic stay so that the filing of the bankruptcy petition does not affect any and all of the enforcement actions set forth in paragraph 8 above that were taken after the filing of the bankruptcy petition in this case.

   a. ☐ These actions were taken by Movant without knowledge of the bankruptcy filing, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Although Movant knew about the bankruptcy filing, Movant had previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting this Property as set forth in paragraph 17(b) above.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on December 20 , 2010 , at Irvine California (city, state).

RASHID MEMON
*Print Declarant's Name*                                        *Signature of Declarant*

*December 2009*                                            **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 11 of* 195    **F 4001-1M.RP**

| In re                              (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| TEAM MINISTRY GROUP, LLC | |
| Debtor(s). | CASE NO.: 2:09-12291-PC |

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
2418 Honolulu Avenue, Suite J, Montrose, California 91020-1842

A true and correct copy of the foregoing document described as NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. 362 _____ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On 12/30/10 _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
Judge Peter Carroll

☑ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 12/30/10 _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 12/30/10 | JAMES W. BATES | |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*    **F 4001-1M.RP**

# MAILING LIST

## SERVED BY U.S. MAIL

Team Ministry Group LLC
1056 E New York Dr
Altadena, CA 91001-3118

Nicholas H. Lambajian, Esq.
215 N. Marengo Avenue, 3rd Floor
Pasadena, California 91101-1504

Nancy Knupfer
Danning, Gill, Diamond & Kollitz
1171 S. Robertson Boulevard. Box 383
Los Angeles, CA 90035-1403

United States Trustee (LA)
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017

Cal Top Realty & Investments
19871 Yorba Linda Blvd # 102
Yorba Linda, CA  92886-2811

D. Marie Battle
1056 East New York Drive
Altadena, California 91001-3118

Vernon Battle
1056 E. New York Drive
Altadena, California 91001-3118

Morteza Aghavali
39 Sycamore Creek
Irvine, California 92603-4238

Derek Leason
20182 Orchid
Newport Beach, CA 92660-0732

Employment Development Department
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, California 94280-0001

## MAILING LIST
### (cont.)

### SERVED BY U.S. MAIL

Franchise Tax Board
Special Procedures Section
P.O. Box 2952
Sacramento, CA 95812-2952

Los Angeles City Clerk
P.O. Box 53200
Los Angeles, California 90053-0200

Cheryl Ernest
5350 White Oak Avenue 101
Encino, California 91316-4524

Citibank
9841 Airport Blvd
Los Angeles, California 90045-5409

Charles and Kathy Dillon
322 Balmy Lane
Rutherfordton NC 28139-8103

David Daniel
300 Frank H. Ogawa Plaza, Suite 223
Oakland, California 94612

Dell Financial Services, LLC
Collections/Consumer Bankruptcy
12234B North I-35
Austin, Texas 78753-1705

Dell Financial Services, LLC
c/o Resurgent Capital Services
P.O. Box 10390
Greenville, SC 29603-0390

Duane Jone
1756 Plaza Serena
Ontario, California 91764-3117

Edward T. Robinson
1314 N. Pearl
Compton, California 90221-1552

13

## MAILING LIST
### (cont.)

## SERVED BY U.S. MAIL

Evan S. Porter
c/o Law Offices Of Kahlil J Mcapi
1608 Centinela Avenue, Suite 6
Inglewood, California 90302-1060

Generation Holdings LLC
20885 Redwood Road 306
Castro Valley, California 94546-5915

Glen David Daniel
300 Frank H. Ogawa Place, Suite 223
Oakland, California 94512-2037

Jennifer Jones
17834 Woodbine Ct
Carson, California 90746-7487

John Montgomery
5144 Cape Tenez Drive
Wittier California 900601-2227

Loureatha Davis
612 East 93rd Street
Los Angeles, California 90002
Margaret Rosita Coleman
3717 S. La Brea Avenue #430
Los Angeles, CA 90016-5300

Marva J. Graves
1310 W. 81st Place
Los Angeles, California 90044-2344
Melvin and Sylvia Gillard
16402 Montbrook Street
La Puente, California 91744-3234

Miguel Zelaya
2520 Periwinkle Drive
San Bernardino, CA 92407-2256

Michelle Finley
130 S. Ridgeway #1
Anaheim, California 92803

14

## MAILING LIST
### (cont.)

### SERVED BY U.S. MAIL

Renee Robinson
1222 West 122nd Street
Los Angeles, California 90044-1132

Rhonda Harris
c/o CF Properties LLC
2324 Maine Avenue
Richmond, CA 94804-2824

Selena Norwood
9487 Stanford Drive
Rancho Cucamonga, CA 91737-1510

Valentin Navas
9506 10th Avenue
Inglewood, California 90305-2906

Yolanda Chappell
1205 West 74 Street
Los Angeles, California 90044-2459

Alan V. Thaler, Esq.
Law Office Of Alan V. Thaler
18660 Cedar Circle
Fountain Valley, California 92708-7219

### SERVED ELECTRONICALLY

Russell Clementson
725 S Figueroa Ste 2600
Los Angeles, CA 90017
russell.clementson@usdoj.gov

1

### DECLARATION OF CHRISTOPHER CHEN

2      CHRISTOPHER CHEN declares:

3      1.   I am licensed by the State Of California Office Of Real

4   Estate Appraisers as a Certified General real estate appraiser.   My

5   real estate appraisal license number is SCREA, AG041127.   I have

6   personal knowledge of the following facts and would competently

7   testify thereto if required to do so.

8      2.   On August 11, 2010, I prepared "A Self-Contained

9   Appraisal Report" (hereinafter "Appraisal") for the real property

10  located at 72 Hacienda Road, Newberry Springs, California 92365

11  ("the Property") at the request of UNITED CENTRAL BANK ("UCB").   A

12  true copy of the Appraisal that I prepared is attached hereto as

13  Exhibit "I" and made a part hereof.

14     3.   As is more fully set forth in the Appraisal, it is my

15  opinion that the Property has a fair market value as of August 5,

16  2010 in the amount of $1,800,000.00.

17     I declare under penalty of perjury under the laws of the

18  United States of America that the foregoing is true and correct.

19     Executed this __<sup>th</sup> day of November 2010 at Glendale,

20  California.

21

22

Christoph
er Chen

Digitally signed by Christopher Chen
DN: cn=Christopher Chen, o=Crest
Consulting, ou,
email=chrischen78@hotmail.com,
c=US
Date: 2010.11.11 14:00:50 -08'00'

_____
CHRISTOPHER CHEN

23

24

25

26

27

28

_____
DECLARATION OF CHRISTOPHER CHEN

### DECLARATION OF JAMES W. BATES

JAMES W. BATES declares:

1.   I am an attorney admitted to practice before all the courts of the State of California and the United States District Court for the Central District Of California.  I am the attorney representing United Central Bank ("UCB") in this matter.  I have personal knowledge of the following facts and would competently testify thereto if required to do so.

2.   The property that is the subject of this motion is located at 72 Hacienda Road, Newbury Springs, California 92365 ("the Property").  I understand that the Property is a former waterpark that is located near Bakersfield, California on the way to Las Vegas, Nevada.  I am informed and believe that the waterpark equipment has been removed and now consists of vacant land with a couple of small out buildings.

3.   The Property is owned by the following persons/entities:

| | |
|---|---|
| Team Ministry Group LL ("Debtor") | 25% |
| Derek Leason ("Leason") | 28.80% |
| Morteza Aghvali ("Aghvali") | 46.20% |

4.   I appeared that the 341a Meeting Of Creditors in this matter on June 4, 2009.  At the hearing, I understood that Chapter 7 Trustee Nancy Knupfer was going to hire an appraiser to determine the value of the Property.

5.   On August 6, 2009, I appeared at the final hearing of the 341a Meeting Of Creditors in this matter.  At the hearing, Nancy Knupfer, Chapter 7 Trustee, announced that her appraiser had determined that the fair market value of the Property was $2,000,000.00, that she had received an offer to purchase the Debtor's 25% interest in the Property for $25,000.00 from Leason

17

DECLARATION OF JAMES W. BATES

1   and Aghvali, the other owners of the Property subject to the first

2   Deed of Trust of UCB.  I understood that counsel for the Chapter 7

3   Trustee would be filing a motion to approve the sale of Debtor's

4   interest in the Property to Leason and Aghavali.

5       6.  On September 1, 2009, Nancy Knupfer, Chapter 7 Trustee,

6   made the following entry of the docket sheet in this matter:

7       **"Chapter 7 Trustee's Report of No Distribution: I, Nancy**

8       **Knupfer, having been appointed trustee of the estate of the**

9       **above-named debtor(s), report that I have neither received any**

10      **property nor paid any money on account of this estate; that I**

11      **have made diligent inquiry into the financial affairs of the**

12      **debtor(s) and the location of the property belonging to the**

13      **estate; and that there is no property available for**

14      **distribution from the estate over and above that exempted by**

15      **law.  Pursuant to Fed R Bank P 5009, I hereby certify that the**

16      **estate of the above named debtor(s) has been fully**

17      **administered.  I request that I be discharged from any further**

18      **duties as trustee."**

19  A true copy of the entry by Ms. Knupfer is attached hereto as a

20  portion of Exhibit "E" hereto and made a part hereof.

21      7.  On June 30, 2009, I wrote to Alan V. Thaler, the attorney

22  for Leason and Aghavali, the other owners of the Property inquiring

23  as to whether they would be making a monthly interest payment.  A

24  true copy of my letter is attached hereto as Exhibit "H" and made a

25  part hereof.  As of this date, Leason and Aghavali have not made

26  any payment in response to my letter dated June 30, 2009 to their

27  counsel.

28  \ \ \

18

DECLARATION OF JAMES W. BATES

1

## **LOCAL RULE 9013-1 COMPLIANCE**

2      8.   On October 21, 2009, 2009, UCB filed a Motion For Relief

3   From The Automatic Stay Under 11 U.S.C. § 362 ("Motion 1") in this

4   matter regarding the subject Property.

5      9.   On November 23 and 24, 2009, an evidentiary hearing on

6   Motion 1 was heard before the Honorable Samuel Bufford, United

7   States Bankruptcy Judge.   Following the evidentiary hearing, the

8   court denied Motion 1 without prejudice.

9      10.   On February 4, 2010, the court entered its Order Denying

10   Motion For Relief From Stay Under 11 U.S.C. § 362 ("Order").   A

11   true copy of the Order is attached hereto as Exhibit "J" and made a

12   part hereof.

13      11.   This motion is being made based upon the passing of time,

14   accrual and nonpayment of additional interest, and a new appraisal

15   on the subject Property.

16      I declare under penalty of perjury under the laws of the

17   United States of America that the foregoing is true and correct.

18      Executed this 20th day of December 2010 at Montrose,

19   California.

20

21

22                              JAMES W. BATES

23

24

25

26

27

28

_____

DECLARATION OF JAMES W. BATES

## MEMORANDUM OF POINTS AND AUTHORITIES

Since Chapter 7 deals only with liquidation, property is never necessary to an effective reorganization.  The sole requirement for granting § 362(d)(2) relief in a Chapter 7 bankruptcy is that the debtor does not have any equity in the subject property.  [In Re Casgul of Nevada, Inc. (9th Cir. BAP 1982) 22 BR 65, 66; In Re Preuss (9th Cir. BAP 1981) 15 BR 896, 897].

Cal. Prac. Guide Bankruptcy Ch. 8(II)-A

.

# EXHIBIT "A"

21

EXHIBIT "A"

DESCRIPTION OF THE LAND

THE LAND REFERRED TO HEREIN IS SITUATED IN SAN BERNARDINO COUNTY, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

The North Half of Section 20, Township 10 North, Range 3 East, San Bernardino Meridian, in the County of San Bernardino, State of California, according to Official Plat thereof;

EXCEPTING therefrom that portion conveyed to the State of California in Deed recorded September 18, 1962 in Book 5768, Page 828 of Official Records.

PROPERTY ADDRESS:  72 Hacienda Road, Newberry Springs, California 92365

# EXHIBIT "B"

23

# UNITED CENTRAL BANK
## PROMISSORY NOTE

**$3,475,000.00**                     **Garland, Texas**                December __18__ , 2007

FOR VALUE RECEIVED, I, we, or either of us ("Borrower"), promises to pay to the order of United Central Bank ("Lender"), at Lender's address at 4555 West Walnut, Garland, Dallas County, Texas 75042, or at such other place as Lender may designate in writing, the principal sum of Three Million Four Hundred Seventy-Five Thousand Dollars ($3,475,000.00), with interest thereon at the Stated Interest Rate, as follows:

I.    **DEFINITIONS.** When used herein, the following terms have the meanings given in this paragraph:

A.    **Maximum Rate.** The term "Maximum Rate" shall mean the highest lawful rate of interest applicable to this Note. In determining the Maximum Rate, due regard shall be given to all payments, fees, charges, deposits, balances and agreements which may constitute interest or be deducted from principal when calculating interest.

B.    **Prime Rate.** The term "Prime Rate" shall mean the prime interest rate as announced or published in the "Money Rates" table of The Wall Street Journal. If multiple prime rates are quoted in the table, then the highest prime rate will be the Prime Rate. In the event that the prime rate is no longer published in The Wall Street Journal, then the Prime Rate shall mean the Prime Rate as announced or published by United Central Bank. Lender may lend to others at rates of interest at, or greater, or less than, the Prime Rate or the rate provided herein. In no event shall the rate of interest calculated hereunder exceed the Maximum Rate. The Prime Rate is only one of the reference rates or indices that United Central Bank uses. United Central Bank lends to others at rates of interest at or greater or less than the Prime Rate or the rate provided herein.

C.    **Stated Interest Rate.** The term "Stated Interest Rate" shall mean the lesser of (i) the Maximum Rate or (ii) the Prime Rate plus two percent (2.00%). As of the date of this Note, the Prime Rate is 7.25% and the Stated Interest Rate is 9.25%. If Lender is ever prevented from charging or collecting interest at the rate set forth in (ii) above because interest at such rate would exceed interest at the Maximum Rate, then the Stated Interest Rate shall continue to be the Maximum Rate until Lender has charged and collected the full amount of interest chargeable and collectible had interest at the

PROMISSORY NOTE - Page 1
ucb\1783\Note – variable

_____ Initial        _____ Initial        _____ Initial

24

rate set forth in (ii) always been lawfully chargeable and collectible. The Stated Interest Rate shall be increased or decreased (subject to the maximum rates specified herein) daily as of the opening of each business day during the term hereof according to the Prime Rate then in effect. Changes in the Stated Interest Rate shall be made without notice to Borrower, effective as of such date. The daily rate shall be equal to 1/360th times the Stated Interest Rate (but shall not exceed the Maximum Rate).

**D.    Security Instruments.** The term "Security Instruments" shall mean any Deed of Trust and/or Security Agreement described herein, together with all other assignments, loan agreements, guaranty agreements, mortgages or other agreement securing or pertaining to this Note or evidencing the loan evidenced hereby.

**2.    PAYMENT.** The principal and interest of this Note are payable on demand, but if no demand is made, then as follows:

**A.**    Accrued but unpaid interest is payable in eleven (11) monthly installments, the first installment of which is due and payable on January 20, 2008, and each subsequent installment of which is due and payable on the twentieth (20th) day of each succeeding calendar month for the ten (10) months thereafter. One final installment in full of the principal and interest then due, owing and outstanding shall be due and payable on December 20, 2008. All payments shall first be applied to the accrued but unpaid interest on the principal balance from time to time remaining outstanding hereunder, with the remainder to be applied toward principal.

**B.**    All or part of the principal hereunder may be prepaid in full or in part at any time without penalty; provided however, that all payments shall first be applied to the accrued but unpaid interest on the principal balance from time to time remaining unpaid, with the remainder, if any, applied toward principal, same to be applied in the inverse order of maturity.

**3.    LATE CHARGE.** In the event that any payment, installment or amount due hereunder continues unpaid for more than ten (10) days following the date such payment is due, including Saturdays, Sundays and holidays, Borrower agrees to pay Lender a late charge in the amount of five percent (5%) of such past due payment, installment or amount due; however, nothing in this paragraph shall be construed to allow Lender to charge or collect interest in excess of the Maximum Rate. Such late charge shall be due and payable upon demand, however, only one late charge shall be paid for each late payment, installment or amount due.

**4.    FINANCIAL INFORMATION.** During the term of the Note, Borrower agrees to furnish to Lender within twenty (20) days of Lender's request, any and all financial information which Lender may request, including, but not limited to, financial statements, tax returns, and tax receipts. Additionally, Borrower agrees to furnish to Lender, as soon as practicable, and in any event mailed within ninety (90) days after the end of its fiscal year, the following information: (a) Borrower's financial statement of annual income and expenses and balance sheet certified by Borrower; (b) Borrower's federal income tax return no later than ten (10) days after said return has been filed with the Internal Revenue Service; and (c) with reasonable promptness, such other financial data as Lender

| DC | | | |
|---|---|---|---|
| Initial | Initial | Initial |

may reasonably request. All financial statements shall be in form and content satisfactory to Lender in Lender's sole discretion.

In addition to or in lieu of exercising any of its rights or remedies under this Note, in the event Borrower fails to provide the financial statements as required hereunder or under the Security Instruments, Lender shall have the right to increase the Stated Interest Rate for a period commencing three (3) days after delivery of written notice to Borrower of such default and ending upon the curing of said noticed default, by one-half of one percent (.50%) for the first thirty (30) days, and to increase the Stated Interest Rate an additional one-fourth of one percent (.25%) for each thirty (30) day period thereafter during which the noticed default continues uncured; provided, however, the Stated Interest Rate shall never exceed the Maximum Rate. Such default interest rates shall apply to the outstanding principal balance of the Note. Upon the curing of the noticed default, the interest rate on the Note shall revert to the initially agreed upon Stated Interest Rate effective on the date on which the default is cured. Such additional interest shall be due and payable with each regularly scheduled payment as set forth herein. All notices to Borrower shall be deemed to be received upon the earlier of actual receipt or three (3) days after deposit in the U.S. Mail, postage prepaid, certified or registered mail, addressed to Borrower at the address set forth in the Deed of Trust. Any noticed default shall be deemed to be cured only at such time as Borrower has provided Lender with evidence satisfactory to Lender, in its sole discretion, that such default has been cured. Nothing contained in this paragraph shall be deemed to be an election of remedies by Lender or a waiver of any of its rights or remedies contained in this Note or other document or instrument evidencing or securing the Note, including, but not limited to, Lender's right to accelerate the Note.

5. **APPLICABLE INTEREST CEILING.** For purposes of determining the Maximum Rate, the Weekly Ceiling specified in Texas Credit Title Art. 5069-1D.002 and/or Texas Finance Code Section 303.201 (formerly Tex. Rev. Civ. Stat. Ann. art. 5069-1.04), as amended, shall be used (Borrower and Lender hereby agreeing to such rate); however, if permitted by law, Lender may implement any ceiling under that law used to compute the rate of interest hereunder by notice to Borrower as provided in such law. Notwithstanding the foregoing sentence, if either Section 501 or Section 511 of the Depository Institutions Deregulatory and Monetary Control Act of 1980, as amended, permit a higher Maximum Rate than the Texas Credit Title and/or Texas Finance Code, such higher Maximum Rate shall apply to this Note.

6. **DEFAULT, REMEDIES.** At the option of Lender, the entire unpaid principal balance and accrued but unpaid interest hereon shall, to the extent permitted by law, at once become due and payable without notice or demand and Lender may foreclose and enforce all liens and security interests securing this Note upon the occurrence at any time of any of the following events: (i) default in the payment of any installment of principal or interest due hereunder; or (ii) default in the performance of any of the covenants or provisions of the Security Instruments; or (iii) the liquidation, termination, dissolution, or (if any of the undersigned is a natural person) the death of any of the undersigned; or (iv) the bankruptcy or insolvency of, the assignment for the benefit of creditors by, or the appointment of a receiver for any property of, any party liable for the payment of this Note, whether as maker, endorser, guarantor, surety, or otherwise; or (v) if Lender, prior to maturity, reasonably believes the prospect for payment hereof is impaired or deems itself insecure. If this Note is not paid when due, whether at maturity or by acceleration, or if it is collected through a bankruptcy,

**PROMISSORY NOTE** - Page 3
ucb\1783\Note – variable

Initial    Initial    Initial

probate, or other judicial proceeding, whether before or after maturity, Borrower agrees to pay reasonable attorney's fees, together with all actual expenses of collection and litigation and costs of court incurred by the holder hereof, whether or not suit is actually filed.

**7.      INTEREST AFTER DEFAULT OR MATURITY.** All past due principal and interest shall bear interest from maturity at the maximum rate of interest permitted by then applicable law or, if no limit is established by applicable law, at the Stated Interest Rate plus five percent (5%) per annum.

**8.      WAIVER.** To the extent permitted by law, Borrower and all other makers, signers, sureties, guarantors and endorsers of this Note waive demand, presentment, notice of dishonor, notice of intent to demand or accelerate payment hereof, notice of acceleration, diligence in the collecting, grace, notice and protest, and agree to one or more extensions for any period or periods of time and partial payments, before or after maturity, without prejudice to the Lender.

**9.      SECURITY.** This Note is secured by a Deed of Trust ("Deed of Trust") of even date herewith, executed by Borrower, covering certain real property situated in the County of San Bernardino and State of California.

**10.      CONTROLLING AGREEMENT.** All agreements between Borrower and Lender, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand or acceleration of the maturity hereof or otherwise, shall the interest contracted for, charged, received, paid or agreed to be paid to Lender exceed interest computed at the Maximum Rate. If, from any circumstance whatsoever, interest would otherwise be payable to Lender hereof in excess of interest computed at the Maximum Rate, the interest payable to Lender shall be reduced to interest computed at the Maximum Rate; and if from any circumstance Lender shall ever receive anything of value deemed interest by applicable law in excess of interest computed at the Maximum Rate, an amount equal to any excessive interest shall be applied to the reduction of the principal hereof and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of principal hereof, such excess shall be refunded to Borrower. All interest paid or agreed to be paid to Lender shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of the principal (including the period of any renewal or extension hereof) so that the interest so computed shall not exceed the Maximum Rate. This paragraph shall control all agreements between Borrower and Lender.

**11.      APPLICABLE LAW.** This Note shall be construed in accordance with the laws of the State of Texas and the laws of the United States applicable to transactions in Texas.

**12.      NO WAIVER.** No delay on the part of Lender in the exercise of any power or right under this Note or Security Instruments shall operate as a waiver thereof, nor shall a single or partial exercise of any power or right preclude other or further exercise thereof or exercise of any other power or right. Enforcement by Lender of any security for the payment hereof shall not constitute any election by it of remedies so as to preclude the exercise of any other remedy available to it.

**PROMISSORY NOTE** - Page 4
ucb\1783\Note – variable

Initial          Initial          Initial

13.    **SUCCESSORS, ASSIGNS.**    The term "Lender" shall include all of Lender's successors and assigns to whom the benefits of this Note shall inure.

14.    **PAYMENT AT MATURITY.**    At the maturity of this Note, Borrower will be required to either (a) pay the entire remaining outstanding principal balance; (b) renew and extend the Note with Lender; or (c) refinance with another lender.    Lender's determination to renew and extend the Note is at Lender's sole discretion and may be upon different terms and conditions, including, but not limited to, changes in the interest rate, amortization and/or payment amount, and may be conditioned upon the payment of additional fees.

Team Ministry Group, LLC,
a Nevada limited liability company

By: _____
Vernon N. Battle, Managing Member

_____
Derek Leason

_____
Morteza Aghavali

Initial        Initial        Initial

28

# EXHIBIT "C"

29

Recorded in Official Records, County of San Bernardino

**LARRY WALKER**
Auditor/Controller — Recorder

1/03/2008
8:00 AM
LJ

*Commonwealth*

*RECORDING REQUESTED BY*
*AND WHEN RECORDED MAIL TO:*

UNITED CENTRAL BANK
4555 West Walnut St.
Garland, TX 75042
Attn: Dana Ledet

783  CommonwealthLandTitle – Glendale

Doc#:  **2008 – 0002243**

| Titles: | 4 | Pages: | 31 |
|---|---|---|---|
| Fees | | | 130.00 |
| Taxes | | | 0.00 |
| Other | | | 0.00 |
| PAID | | | $130.00 |

Tax Parcel Number(s):  0539-031-02-0-000

50 7484 - (c)

Space Above for Recorder's Use

### DEED OF TRUST,
### ASSIGNMENT OF RENTS,
### SECURITY AGREEMENT AND FIXTURE FILING

### (CALIFORNIA)

**ATTENTION COUNTY RECORDER: THIS INSTRUMENT IS INTENDED TO BE EFFECTIVE AS A FINANCING STATEMENT FILED AS A FIXTURE FILING PURSUANT TO SECTION 9402 OF THE CALIFORNIA COMMERCIAL CODE. PORTIONS OF THE GOODS COMPRISING A PART OF THE MORTGAGED PROPERTY ARE OR ARE TO BECOME FIXTURES RELATED TO THE LAND DESCRIBED IN EXHIBIT A HERETO. THIS INSTRUMENT IS TO BE FILED FOR RECORD IN THE RECORDS OF THE COUNTY WHERE DEEDS OF TRUST ON REAL PROPERTY ARE RECORDED AND SHOULD BE INDEXED AS BOTH A DEED OF TRUST AND AS A FINANCING STATEMENT COVERING FIXTURES.  THE ADDRESSES OF BORROWER (DEBTOR) AND LENDER (SECURED PARTY) ARE SPECIFIED IN THE FIRST PARAGRAPH ON PAGE 1 OF THIS INSTRUMENT.**

THIS DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING (the "Instrument") is made to be effective **December 18**, **2007**, by **DEREK LEASON, a married man as his sole and separate property, as to an undivided 46.20% interest, and TEAM MINISTRY GROUP, LLC, a Nevada limited liability company, as to an undivided 25.00% interest, and MORTEZA AGHAVALI, a married man as his sole and separate property, as to an undivided 28.80% interest, all as tenants in common,** whose addresses are **72 Hacienda Road, Newberry Springs, CA 92365,** as trustor (jointly and severally referred to herein in the singular as "Borrower"), to **COMMONWEALTH LAND TITLE COMPANY, a California corporation,** as trustee ("**Trustee**"), for the benefit of **UNITED CENTRAL BANK, a Texas Commercial Bank,** whose address is **4555 West Walnut St., Garland, Texas 75042 Attn: Mohammed Younus,** as beneficiary ("**Lender**"). Team Ministry Group, LLC's organizational identification number is E0343092006-3.

Borrower in consideration of the Indebtedness and the trust created by this Instrument, irrevocably grants, conveys and assigns to Trustee, in trust, with power of sale, the Mortgaged Property, including the Land located in **San Bernardino County, State of California** and described in Exhibit A attached to this Instrument.

**DEED OF TRUST** - Page 1
ucb\1783\Deed of Trust - CA

30

TO SECURE TO LENDER the repayment of the Indebtedness evidenced by Borrower's Promissory Note payable to Lender, dated as of the date of this Instrument, and maturing on **December 20, 2008** (the "Maturity Date"), in the principal amount of **THREE MILLION FOUR HUNDRED SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS (US $3,475,000.00)**, and all renewals, extensions and modifications of the Indebtedness, the payment of all sums advanced by or on behalf of Lender to protect the security of this Instrument under Section 12, and the performance of the covenants and agreements of Borrower contained in the Loan Documents.

Borrower represents and warrants that Borrower is lawfully seized of the Mortgaged Property and has the right, power and authority to grant, convey and assign the Mortgaged Property, and that the Mortgaged Property is unencumbered, except as shown on the schedule of exceptions to coverage in the title policy issued to and accepted by Lender contemporaneously with the execution and recordation of this Instrument and insuring Lender's interest in the Mortgaged Property (the "**Schedule of Title Exceptions**"). Borrower covenants that Borrower will warrant and defend generally the title to the Mortgaged Property against all claims and demands, subject to any easements and restrictions listed in the Schedule of Title Exceptions.

**Covenants.** In consideration of the mutual promises set forth in this Instrument, Borrower and Lender covenant and agree as follows:

1.       DEFINITIONS. The following terms, when used in this Instrument (including when used in the above recitals), shall have the following meanings:

(a)      "**Assignment**" means that certain Assignment of Leases and Rents dated the same date as this Instrument, executed by Borrower, as Assignor, in favor of Lender, as Assignee, affecting the Mortgaged Property and given as additional security for the Indebtedness.

(b)      "**Attorneys' Fees and Costs**" means (i) fees and out-of-pocket costs of Lender's and Loan Servicer's attorneys, as applicable, including costs of Lender's and Loan Servicer's in-house counsel, support staff costs, costs of preparing for litigation, computerized research, telephone and facsimile transmission expenses, mileage, deposition costs, postage, duplicating, process service, videotaping and similar costs and expenses; (ii) costs and fees of expert witnesses, including appraisers; and (iii) investigatory fees.

(c)      "**Borrower**" means all persons or entities identified as "Borrower" in the first paragraph of this Instrument, together with their successors and assigns.

(d)      "**Borrower Certificate**" means that certain Borrower Certificate dated the same date as this Instrument, executed by Borrower in favor of Lender.

(e)      "**Collateral Agreement**" means any separate agreement between Borrower and Lender for the purpose of establishing replacement reserves for the Mortgaged Property, establishing a fund to assure the completion of repairs or improvements specified in that agreement, or assuring reduction of the outstanding principal balance of the Indebtedness if the occupancy of or income from the Mortgaged Property does not increase to a level specified in that agreement, or any other agreement or agreements between Borrower and Lender which provide for the establishment of any other fund, reserve or account.

(f)      "**Controlling Entity**" means an entity which owns, directly or indirectly through one or more intermediaries, (A) a general partnership interest or a Controlling Interest of the limited partnership interests in Borrower (if Borrower is a partnership or joint venture), (B) a manager's interest in Borrower or a Controlling Interest of the ownership or membership interests in Borrower (if Borrower is a limited liability company), or (C) a Controlling Interest of any class of voting stock of Borrower (if Borrower is a corporation).

**DEED OF TRUST** - Page 2
ucb\1783\Deed of Trust - CA

31

(g)    "**Controlling Interest**" means (i) 51 percent or more of the ownership interests in an entity, or (ii) a percentage ownership interest in an entity of less than 51 percent, if the owner(s) of that interest actually direct(s) the business and affairs of the entity without the requirement of consent of any other party.

(h)    "**Environmental Indemnity**" means that certain Environmental Indemnity Agreement dated the same date as this Instrument, executed by Borrower, as Indemnitor, in favor of Lender, as Indemnitee.

(i)    "**Environmental Permit**" means any permit, license, or other authorization issued under any Hazardous Materials Law with respect to any activities or businesses conducted on or in relation to the Mortgaged Property.

(j)    "**Event of Default**" means the occurrence of any event listed in Section 22.

(k)    "**Fixtures**" means all property owned by Borrower which is so attached to the Land or the Improvements as to constitute a fixture under applicable law, including: machinery, equipment, engines, boilers, incinerators, installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring and conduits used in connection with radio, television, security, fire prevention, or fire detection or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances; light fixtures, awnings, storm windows and storm doors; pictures, screens, blinds, shades, curtains and curtain rods; mirrors; cabinets, paneling, rugs and floor and wall coverings; fences, trees and plants; swimming pools; and exercise equipment.

(l)    "**Governmental Authority**" means any board, commission, department or body of any municipal, county, state or federal governmental unit, or any subdivision of any of them, that has or acquires jurisdiction over the Mortgaged Property or the use, operation or improvement of the Mortgaged Property.

(m)    "**Hazard Insurance**" is defined in Section 19.

(n)    "**Hazardous Materials**" means petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives; flammable materials; radioactive materials; polychlorinated biphenyls ("PCBs") and compounds containing them; lead and lead-based paint; asbestos or asbestos-containing materials in any form that is or could become friable; underground or above-ground storage tanks, whether empty or containing any substance; any substance the presence of which on the Mortgaged Property is prohibited by any federal, state or local authority; any substance that requires special handling; and any other material or substance now or in the future defined as a "hazardous substance," "hazardous material," "hazardous waste," "toxic substance," "toxic pollutant," "contaminant," or "pollutant" within the meaning of any Hazardous Materials Law.

(o)    "**Hazardous Materials Laws**" means all federal, state, and local laws, ordinances and regulations and standards, rules, policies and other governmental requirements, administrative rulings and court judgments and decrees in effect now or in the future and including all amendments, that relate to Hazardous Materials or the protection of human health or the environment and apply to Borrower or to the Mortgaged Property. Hazardous Materials Laws include, but are not limited to, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601, *et seq.*, the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, *et seq.*, the Toxic Substance Control Act, 15 U.S.C. Section 2601, *et seq.*, the

32

Clean Water Act, 33 U.S.C. Section 1251, *et seq.*, the Emergency Planning and Community Right-to-Know Act of 1986, as amended, the Solid Waste Disposal Act, as amended, the Clean Air Act, as amended, the Safe Drinking Water Act, as amended, the Occupational Safety and Health Act, as amended, and the Hazardous Materials Transportation Act, 49 U.S.C. Section 5101, and their state analogs.

(p)    **"Impositions"** and *"Imposition Deposits"* are defined in Section 7(a).

(q)    **"Improvements"** means the buildings, structures, improvements, and alterations now constructed or at any time in the future constructed or placed upon the Land, including any future replacements and additions.

(r)    **"Indebtedness"** means the principal of, interest at the fixed or variable rate set forth in the Note on, and all other amounts due at any time under, the Note, this Instrument or any other Loan Document, including late charges, default interest, and advances as provided in Section 12 to protect the security of this Instrument.

(s)    **"Initial Owners"** means, with respect to Borrower or any other entity, the person(s) or entity(ies) that (i) on the date of the Note, or (ii) on the date of a Transfer to which Lender has consented, own in the aggregate 100% of the ownership interests in Borrower or that entity.

(t)    **"Land"** means the land described in Exhibit A.

(u)    **"Leases"** means all present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Mortgaged Property, or any portion of the Mortgaged Property, and all modifications, extensions or renewals.

(v)    **"Lender"** means the entity identified as "Lender" in the first paragraph of this Instrument, or any subsequent holder of the Note.

(w)    **"Loan Documents"** means the Note, this Instrument, the Assignment, the Borrower Certificate, the Environmental Indemnity, all guaranties, all indemnity agreements, all Collateral Agreements, O&M Programs, and any other documents now or in the future executed by Borrower, any guarantor or any other person in connection with the loan evidenced by the Note, as such documents may be amended from time to time.

(x)    **"Loan Servicer"** means the entity that from time to time is designated by Lender to collect payments and deposits and receive notices under the Note, this Instrument and any other Loan Document, and otherwise to service the loan evidenced by the Note for the benefit of Lender. Unless Borrower receives notice to the contrary, the Loan Servicer is the entity identified as "Lender" in the first paragraph of this Instrument.

(y)    **"Mortgaged Property"** means all of Borrower's present and future right, title and interest in and to all of the following: (1) the Land; (2) the Improvements; (3) the Fixtures; (4) the Personalty; (5) all current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights-of-way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefiting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated; (6) all proceeds paid or to be paid by any insurer of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, whether or not Borrower obtained the insurance pursuant to Lender's requirement; (7) all awards, payments and other compensation made or to be made by any municipal, state or federal authority with respect to the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, including any awards or settlements resulting from condemnation proceedings or the total or partial taking of the Land, the Improvements, the Fixtures, the Personalty or any other

**DEED OF TRUST** - Page 4
ucb\1783\Deed of Trust - CA

part of the Mortgaged Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof; (8) all contracts, options and other agreements for the sale of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property entered into by Borrower now or in the future, including cash or securities deposited to secure performance by parties of their obligations; (9) all proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds; (10) all Rents and Leases; (11) all earnings, royalties, accounts receivable, issues and profits from the Land, the Improvements or any other part of the Mortgaged Property, and all undisbursed proceeds of the loan secured by this Instrument and, if Borrower is a cooperative housing corporation, maintenance charges or assessments payable by shareholders or residents; (12) all Imposition Deposits; (13) all refunds or rebates of Impositions by any municipal, state or federal authority or insurance company (other than refunds applicable to periods before the real property tax year in which this Instrument is dated); (14) all tenant security deposits which have not been forfeited by any tenant under any Lease and any bond or other security in lieu of such deposits; and (15) all names under or by which any of the above Mortgaged Property may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Mortgaged Property.

(z)    "**Note**" means the Promissory Note described on page 1 of this Instrument, including all schedules, riders, allonges and addenda, as such Promissory Note may be amended from time to time.

(aa)    "**O&M Program**" shall have the meaning as defined in the Environmental Indemnity.

(bb)    "**Personalty**" means all: (i) accounts (including deposit accounts); (ii) equipment and inventory owned by Borrower, which are used now or in the future in connection with the ownership, management or operation of the Land or Improvements or are located on the Land or Improvements, including furniture, furnishings, machinery, building materials, goods, supplies, tools, books, records (whether in written or electronic form), computer equipment (hardware and software); (iii) other tangible personal property including ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances (other than Fixtures); (iv) any operating agreements relating to the Land or the Improvements; (v) any surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements; (vi) all other intangible property, general intangibles and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental permits relating to any activities on the Land and including subsidy or similar payments received from any sources, including a governmental authority; and (vii) any rights of Borrower in or under letters of credit.

(cc)    "**Property Jurisdiction**" is defined in Section 30(a).

(dd)    "**Rents**" means all rents, revenues and other income of the Land or the Improvements, including parking fees and vending machine income and fees and charges for other services provided at the Mortgaged Property, whether now due, past due, or to become due, and deposits forfeited by tenants.

(ee)    "**Taxes**" means all taxes, assessments, vault rentals and other charges, if any, general, special or otherwise, including all assessments for schools, public betterments and general or local improvements, which are levied, assessed or imposed by any public authority or quasi-public authority, and which, if not paid, will become a lien, on the Land or the Improvements.

(ff)    "**Transfer**" is defined in Section 21.

**DEED OF TRUST** - Page 5
ucb\1783\Deed of Trust - CA

34

2. **UNIFORM COMMERCIAL CODE SECURITY AGREEMENT.**

(a)    This Instrument is also a security agreement under the Uniform Commercial Code for any of the Mortgaged Property which, under applicable law, may be subjected to a security interest under the Uniform Commercial Code, whether such Mortgaged Property is owned now or acquired in the future, and all products and cash and non-cash proceeds thereof (collectively, "UCC Collateral"), and Borrower hereby grants to Lender a security interest in the UCC Collateral. Borrower hereby authorizes Lender to prepare and file financing statements, continuation statements and financing statement amendments in such form as Lender may require to perfect or continue the perfection of this security interest and Borrower agrees, if Lender so requests, to execute and deliver to Lender such financing statements, continuation statements and amendments. Borrower shall pay all filing costs and all costs and expenses of any record searches for financing statements and/or amendments that Lender may require. Without the prior written consent of Lender, Borrower shall not create or permit to exist any other lien or security interest in any of the UCC Collateral. Unless Borrower gives Notice to Lender within 30 days after the occurrence of any of the following, and executes and delivers to Lender modifications or supplements of this Instrument (and any financing statement which may be filed in connection with this Instrument) as Lender may require, Borrower shall not (i) change its name, identity, structure or jurisdiction of organization; (ii) change the location of its place of business (or chief executive office if more than one place of business); or (iii) add to or change any location at which any of the Mortgaged Property is stored, held or located. If an Event of Default has occurred and is continuing, Lender shall have the remedies of a secured party under the Uniform Commercial Code, in addition to all remedies provided by this Instrument or existing under applicable law. In exercising any remedies, Lender may exercise its remedies against the UCC Collateral separately or together, and in any order, without in any way affecting the availability of Lender's other remedies. This Instrument constitutes a financing statement with respect to any part of the Mortgaged Property that is or may become a Fixture, if permitted by applicable law.

(b)    Notwithstanding anything to the contrary contained in this Deed of Trust, the water slides and all other improvements currently located on the Land shall not be included in the definition of Mortgaged Property and Lender does not have a lien or security interest in such water slides and other improvements; provided, however, Lender shall have a lien and security interest on all improvements constructed on the Land after the date hereof. Borrower has the right to demolish and remove the water slides and all other improvements currently located on the Land.

3. **ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.**

(a)    As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all Rents. It is the intention of Borrower to establish a present, absolute and irrevocable transfer and assignment to Lender of all Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower. Promptly upon request by Lender, Borrower agrees to execute and deliver such further assignments as Lender may from time to time require. Borrower and Lender intend this assignment of Rents to be immediately effective and to constitute an absolute present assignment and not an assignment for additional security only. For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, Rents shall not be deemed to be a part of the "Mortgaged Property" as that term is defined in Section 1. However, if this present, absolute and unconditional assignment of Rents is not enforceable by its terms under the laws of the Property Jurisdiction, then the Rents shall be included as a part of the Mortgaged Property and it is the

DEED OF TRUST - Page 6
ucb\1783\Deed of Trust - CA

intention of the Borrower that in this circumstance this Instrument create and perfect a lien on Rents in favor of Lender, which lien shall be effective as of the date of this Instrument.

(b)    After the occurrence of an Event of Default, Borrower authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Mortgaged Property to pay all Rents to, or as directed by, Lender. However, until the occurrence of an Event of Default, Lender hereby grants to Borrower a revocable license to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender and to apply all Rents to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including Imposition Deposits, and to pay the current costs and expenses of managing, operating and maintaining the Mortgaged Property, including utilities, Taxes and insurance premiums (to the extent not included in Imposition Deposits), tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained by Borrower free and clear of, and released from, Lender's rights with respect to Rents under this Instrument. From and after the occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, or by a receiver, Borrower's license to collect Rents shall automatically terminate and Lender shall without notice be entitled to all Rents as they become due and payable, including Rents then due and unpaid. Borrower shall pay to Lender upon demand all Rents to which Lender is entitled. At any time on or after the date of Lender's demand for Rents, Lender may give, and Borrower hereby irrevocably authorizes Lender to give, notice to all tenants of the Mortgaged Property instructing them to pay all Rents to Lender, no tenant shall be obligated to inquire further as to the occurrence or continuance of an Event of Default, and no tenant shall be obligated to pay to Borrower any amounts which are actually paid to Lender in response to such a notice. Any such notice by Lender shall be delivered to each tenant personally, by mail or by delivering such demand to each rental unit. Borrower shall not interfere with and shall cooperate with Lender's collection of such Rents.

(c)    Borrower represents and warrants to Lender that Borrower has not executed any prior assignment of Rents (other than an assignment of Rents securing indebtedness that will be paid off and discharged with the proceeds of the loan evidenced by the Note), that Borrower has not performed, and Borrower covenants and agrees that it will not perform, any acts and has not executed, and shall not execute, any instrument which would prevent Lender from exercising its rights under this Section 3, and that at the time of execution of this Instrument there has been no anticipation or prepayment of any Rents for more than two months prior to the due dates of such Rents. Borrower shall not collect or accept payment of any Rents more than one (1) month prior to the due dates of such Rents.

(d)    If an Event of Default has occurred and is continuing, Lender may, regardless of the adequacy of Lender's security or the solvency of Borrower and even in the absence of waste, enter upon and take and maintain full control of the Mortgaged Property in order to perform all acts that Lender in its discretion determines to be necessary or desirable for the operation and maintenance of the Mortgaged Property, including the execution, cancellation or modification of Leases, the collection of all Rents, the making of repairs to the Mortgaged Property and the execution or termination of contracts providing for the management, operation or maintenance of the Mortgaged Property, for the purposes of enforcing the assignment of Rents pursuant to Section 3(a), protecting the Mortgaged Property or the security of this Instrument, or for such other purposes as Lender in its discretion may deem necessary or desirable. Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's

**DEED OF TRUST** - Page 7
ucb\1783\Deed of Trust - CA

36

solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law. Lender or the receiver, as the case may be, shall be entitled to receive a reasonable fee for managing the Mortgaged Property. Immediately upon appointment of a receiver or immediately upon the Lender's entering upon and taking possession and control of the Mortgaged Property, Borrower shall surrender possession of the Mortgaged Property to Lender or the receiver, as the case may be, and shall deliver to Lender or the receiver, as the case may be, all documents, records (including computer files and other records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Mortgaged Property and all security deposits and prepaid Rents. In the event Lender takes possession and control of the Mortgaged Property, Lender may exclude Borrower and its representatives from the Mortgaged Property. Borrower acknowledges and agrees that the exercise by Lender of any of the rights conferred under this Section 3 shall not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and Improvements.

(e)     If Lender enters the Mortgaged Property, Lender shall be liable to account only to Borrower and only for those Rents actually received. Lender shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Mortgaged Property, by reason of any act or omission of Lender under this Section 3, and Borrower hereby releases and discharges Lender from any such liability to the fullest extent permitted by law.

(f)     If the Rents are not sufficient to meet the costs of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become an additional part of the Indebtedness as provided in Section 12.

(g)     Any entering upon and taking of control of the Mortgaged Property by Lender or the receiver, as the case may be, and any application of Rents as provided in this Instrument shall not cure or waive any Event of Default or invalidate any other right or remedy of Lender under applicable law or provided for in this Instrument.

**4.     ASSIGNMENT OF LEASES; LEASES AFFECTING THE MORTGAGED PROPERTY.**

(a)     As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all of Borrower's right, title and interest in, to and under the Leases, including Borrower's right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease. It is the intention of Borrower to establish a present, absolute and irrevocable transfer and assignment to Lender of all of Borrower's right, title and interest in, to and under the Leases. Borrower and Lender intend this assignment of the Leases to be immediately effective and to constitute an absolute present assignment and not an assignment for additional security only. For purposes of giving effect to this absolute assignment of the Leases, and for no other purpose, the Leases shall not be deemed to be a part of the "Mortgaged Property" as that term is defined in Section 1. However, if this present, absolute and unconditional assignment of the Leases is not enforceable by its terms under the laws of the Property Jurisdiction, then the Leases shall be included as a part of the Mortgaged Property and it is the intention of the

Borrower that in this circumstance this Instrument create and perfect a lien on the Leases in favor of Lender, which lien shall be effective as of the date of this Instrument.

(b)    Until Lender gives notice to Borrower of Lender's exercise of its rights under this Section 4, Borrower shall have all rights, power and authority granted to Borrower under any Lease (except as otherwise limited by this Section or any other provision of this Instrument), including the right, power and authority to modify the terms of any Lease or extend or terminate any Lease. Upon the occurrence of an Event of Default, the permission given to Borrower pursuant to the preceding sentence to exercise all rights, power and authority under Leases shall terminate. Borrower shall comply with and observe Borrower's obligations under all Leases, including Borrower's obligations pertaining to the maintenance and disposition of tenant security deposits.

(c)    Borrower acknowledges and agrees that the exercise by Lender, either directly or by a receiver, of any of the rights conferred under this Section 4 shall not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and the Improvements. The acceptance by Lender of the assignment of the Leases pursuant to Section 4(a) shall not at any time or in any event obligate Lender to take any action under this Instrument or to expend any money or to incur any expenses. Lender shall not be liable in any way for any injury or damage to person or property sustained by any person or persons, firm or corporation in or about the Mortgaged Property. Prior to Lender's actual entry into and taking possession of the Mortgaged Property, Lender shall not (i) be obligated to perform any of the terms, covenants and conditions contained in any Lease (or otherwise have any obligation with respect to any Lease); (ii) be obligated to appear in or defend any action or proceeding relating to the Lease or the Mortgaged Property; or (iii) be responsible for the operation, control, care, management or repair of the Mortgaged Property or any portion of the Mortgaged Property. The execution of this Instrument by Borrower shall constitute conclusive evidence that all responsibility for the operation, control, care, management and repair of the Mortgaged Property is and shall be that of Borrower, prior to such actual entry and taking of possession.

(d)    Upon delivery of notice by Lender to Borrower of Lender's exercise of Lender's rights under this Section 4 at any time after the occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, by a receiver, or by any other manner or proceeding permitted by the laws of the Property Jurisdiction, Lender immediately shall have all rights, powers and authority granted to Borrower under any Lease, including the right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease.

(e)    Borrower shall, promptly upon Lender's request, deliver to Lender an executed copy of each Lease then in effect.

(f)    Borrower further covenants with Lender that (i) all Leases shall be written on a standard form of lease that has been or will be approved in writing in advance by Lender; (ii) upon request, Borrower shall furnish Lender with executed copies of all Leases and all amendments thereto; (iii) no material changes may be made to the Lender-approved standard lease without the prior written consent of Lender; (iv) all renewals of Leases and all proposed Leases shall provide for rental rates comparable to existing local market rates and shall be arm's-length transactions; (v) all Leases shall provide that (A) they are subordinate to this Security Instrument and any other indebtedness now or hereafter secured by the Mortgaged Property, (B) Lessees agree to attorn to Lender (such attornment to be effective upon Lender's acquisition of title to the Mortgaged Property), (C) Lessees agree to execute such further evidences of attornment as Lender may from

**DEED OF TRUST** - Page 9
ucb\1783\Deed of Trust - CA

time to time request, (D) the attornment of Lessees shall not be terminated by foreclosure, (E) Lender may, at Lender's option, accept or reject such attornment, and (F) Lessees agree to execute and acknowledge a subordination, attornment and non-disturbance agreement in form and content acceptable to Lender, and, two times in any calendar year, as Lender may request, a certificate signed by Lessee confirming and containing such factual certifications and representations deemed appropriate by Lender; (vi) Borrower shall not grant any purchase options without the prior written approval of Lender, and (vii) all new Leases shall be subject to the prior written approval of Lender.

(g)     Borrower shall not receive or accept Rent under any Lease for more than one (1) month in advance.

5.     **PAYMENT OF INDEBTEDNESS; PERFORMANCE UNDER LOAN DOCUMENTS.** Borrower shall pay the Indebtedness when due in accordance with the terms of the Note and the other Loan Documents and shall perform, observe and comply with all other provisions of the Note and the other Loan Documents.

6.     **FULL RECOURSE PERSONAL LIABILITY.** Borrower shall have full recourse personal liability under the Note, this Instrument and all other Loan Documents for the repayment of the Indebtedness and for the performance of any and all other obligations of Borrower under the Note, this Instrument and all other Loan Documents.

7.     **DEPOSITS FOR TAXES, INSURANCE AND OTHER CHARGES.**

(a)     Borrower shall deposit with Lender on the day monthly installments of principal or interest, or both, are due under the Note (or on another day designated in writing by Lender), until the Indebtedness is paid in full, an additional amount sufficient to accumulate with Lender the entire sum required to pay, when due (1) any water and sewer charges which, if not paid, may result in a lien on all or any part of the Mortgaged Property, (2) the premiums for fire and other hazard insurance, rent loss insurance and such other insurance as Lender may require under Section 19, (3) Taxes, and (4) amounts for other charges and expenses which Lender at any time reasonably deems necessary to protect the Mortgaged Property, to prevent the imposition of liens on the Mortgaged Property, or otherwise to protect Lender's interests, all as reasonably estimated from time to time by Lender, plus one-sixth of such estimate. The amounts deposited under the preceding sentence are collectively referred to in this Instrument as the **"Imposition Deposits"**. The obligations of Borrower for which the Imposition Deposits are required are collectively referred to in this Instrument as **"Impositions"**. The amount of the Imposition Deposits shall be sufficient to enable Lender to pay each Imposition before the last date upon which such payment may be made without any penalty or interest charge being added. Lender shall maintain records indicating how much of the monthly Imposition Deposits and how much of the aggregate Imposition Deposits held by Lender are held for the purpose of paying Taxes, insurance premiums and each other obligation of Borrower for which Imposition Deposits are required. Any waiver by Lender of the requirement that Borrower remit Imposition Deposits to Lender may be revoked by Lender, in Lender's discretion, at any time upon notice to Borrower.

(b)     Imposition Deposits shall be held in an institution (which may be Lender, if Lender is such an institution) whose deposits or accounts are insured or guaranteed by a federal agency. Lender shall not be obligated to open additional accounts or deposit Imposition Deposits in additional institutions when the amount of the Imposition Deposits exceeds the maximum amount of the federal deposit insurance or guaranty. Lender shall apply the Imposition Deposits to pay Impositions so long as no Event of Default has occurred and is continuing. Unless applicable law requires, Lender shall not be required to pay Borrower any interest, earnings or profits on the Imposition Deposits. Borrower hereby pledges and grants to Lender a security interest in the

**DEED OF TRUST** - Page 10
ucb\1783\Deed of Trust - CA

39

Imposition Deposits as additional security for all of Borrower's obligations under this Instrument and the other Loan Documents. Any amounts deposited with Lender under this Section 7 shall not be trust funds, nor shall they operate to reduce the Indebtedness, unless applied by Lender for that purpose under Section 7(e).

(c)     If Lender receives a bill or invoice for an Imposition, Lender shall pay the Imposition from the Imposition Deposits held by Lender. Lender shall have no obligation to pay any Imposition to the extent it exceeds Imposition Deposits then held by Lender. Lender may pay an Imposition according to any bill, statement or estimate from the appropriate public office or insurance company without inquiring into the accuracy of the bill, statement or estimate or into the validity of the Imposition.

(d)     If at any time the amount of the Imposition Deposits held by Lender for payment of a specific Imposition exceeds the amount reasonably deemed necessary by Lender plus one-sixth of such estimate, the excess shall be credited against future installments of Imposition Deposits. If at any time the amount of the Imposition Deposits held by Lender for payment of a specific Imposition is less than the amount reasonably estimated by Lender to be necessary plus one-sixth of such estimate, Borrower shall pay to Lender the amount of the deficiency within 15 days after written request by Lender.

(e)     If an Event of Default has occurred and is continuing, Lender may apply any Imposition Deposits, in any amounts and in any order as Lender determines, in Lender's discretion, to pay any Impositions or as a credit against the Indebtedness. Upon payment in full of the Indebtedness, Lender shall refund to Borrower any Imposition Deposits held by Lender.

8.     **COLLATERAL AGREEMENTS.**  Borrower shall deposit with Lender such amounts as may be required by any Collateral Agreement and shall perform all other obligations of Borrower under each Collateral Agreement.

9.     **APPLICATION OF PAYMENTS.**  If at any time Lender receives, from Borrower or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, then Lender may apply that payment to amounts then due and payable in any manner and in any order determined by Lender, in Lender's discretion. Neither Lender's acceptance of an amount which is less than all amounts then due and payable nor Lender's application of such payment in the manner authorized shall constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction. Notwithstanding the application of any such amount to the Indebtedness, Borrower's obligations under this Instrument and the Note shall remain unchanged.

10.     **COMPLIANCE WITH LAWS.**  Borrower shall comply with all laws, ordinances, regulations and requirements of any Governmental Authority and all recorded lawful covenants and agreements relating to or affecting the Mortgaged Property, including all laws, ordinances, regulations, requirements and covenants pertaining to health and safety, construction of improvements on the Mortgaged Property, fair housing, zoning and land use, and Leases. Borrower also shall comply with all applicable laws that pertain to the maintenance and disposition of tenant security deposits. Borrower shall at all times maintain records sufficient to demonstrate compliance with the provisions of this Section 10. Borrower shall take appropriate measures to prevent, and shall not engage in or knowingly permit, any illegal activities at the Mortgaged Property that could endanger tenants or visitors, result in damage to the Mortgaged Property, result in forfeiture of the Mortgaged Property, or otherwise materially impair the lien created by this Instrument or Lender's interest in the Mortgaged Property. Borrower represents and warrants to Lender that no portion of the Mortgaged Property has been or will be purchased with the proceeds of any illegal activity.

**DEED OF TRUST** - Page 11
ucb\1783\Deed of Trust - CA

11.    **USE OF PROPERTY.** Unless required by applicable law, Borrower shall not (a) except for any change in use approved by Lender, allow changes in the use for which all or any part of the Mortgaged Property is being used at the time this Instrument was executed, or (b) initiate or acquiesce in a change in the zoning classification of the Mortgaged Property, or (c) establish any condominium or cooperative regime with respect to the Mortgaged Property.

12.    **PROTECTION OF LENDER'S SECURITY.**

(a)    If Borrower fails to perform any of its obligations under this Instrument or any other Loan Document, or if any action or proceeding is commenced which purports to affect the Mortgaged Property, Lender's security or Lender's rights under this Instrument, including eminent domain, insolvency, code enforcement, civil or criminal forfeiture, enforcement of Hazardous Materials Laws, fraudulent conveyance or reorganizations or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, disburse such sums and take such actions as Lender reasonably deems necessary to perform such obligations of Borrower and to protect Lender's interest, including (1) payment of fees and out of pocket expenses of attorneys, accountants, inspectors and consultants, (2) entry upon the Mortgaged Property to make repairs or secure the Mortgaged Property, (3) procurement of the insurance required by Section 19, and (4) payment of amounts which Borrower has failed to pay under Sections 15 and 17.

(b)    Any amounts disbursed by Lender under this Section 12, or under any other provision of this Instrument that treats such disbursement as being made under this Section 12, shall be added to, and become part of, the principal component of the Indebtedness, shall be immediately due and payable and shall bear interest from the date of disbursement until paid at the "**Default Rate**", as defined in the Note.

(c)    Nothing in this Section 12 shall require Lender to incur any expense or take any action.

13.    **INSPECTION.** Lender, its agents, representatives, and designees may make or cause to be made entries upon and inspections of the Mortgaged Property (including environmental inspections and tests) during normal business hours, or at any other reasonable time.

14.    **BOOKS AND RECORDS; FINANCIAL REPORTING.**

(a)    Borrower shall keep and maintain at all times at the Mortgaged Property or the management agent's offices, and upon Lender's request shall make available at the Mortgaged Property, complete and accurate books of account and records (including copies of supporting bills and invoices) adequate to reflect correctly the operation of the Mortgaged Property, and copies of all written contracts, Leases, and other instruments which affect the Mortgaged Property. The books, records, contracts, Leases and other instruments shall be subject to examination and inspection at any reasonable time by Lender.

(b)    Borrower shall furnish to Lender all of the following:

(1)    within 120 days after the end of each fiscal year of Borrower, a statement of income and expenses for Borrower's operation of the Mortgaged Property for that fiscal year, a statement of changes in financial position of Borrower relating to the Mortgaged Property for that fiscal year and, when requested by Lender, a balance sheet showing all assets and liabilities of Borrower relating to the Mortgaged Property as of the end of that fiscal year;

(2)    within 120 days after the end of each fiscal year of Borrower, and at any other time upon Lender's request, a rent schedule for the Mortgaged Property showing the name of each tenant, and for each tenant, the space occupied, the

**DEED OF TRUST** - Page 12
ucb\1783\Deed of Trust - CA

41

lease expiration date, the rent payable for the current month, the date through which rent has been paid, and any related information requested by Lender;

(3)    within 120 days after the end of each fiscal year of Borrower, and at any other time upon Lender's request, an accounting of all security deposits held pursuant to all Leases, including the name of the institution (if any) and the names and identification numbers of the accounts (if any) in which such security deposits are held and the name of the person to contact at such financial institution, along with any authority or release necessary for Lender to access information regarding such accounts;

(4)    within 120 days after the end of each fiscal year of Borrower, and at any other time upon Lender's request, a statement that identifies all owners of any interest in Borrower and any Controlling Entity and the interest held by each, if Borrower or a Controlling Entity is a corporation, all officers and directors of Borrower and the Controlling Entity, and if Borrower or a Controlling Entity is a limited liability company, all managers who are not members;

(5)    upon Lender's request, quarterly income and expense statements for the Mortgaged Property;

(6)    upon Lender's request at any time when an Event of Default has occurred and is continuing, monthly income and expense statements for the Mortgaged Property;

(7)    upon Lender's request, a monthly property management report for the Mortgaged Property, showing the number of inquiries made and rental applications received from tenants or prospective tenants and deposits received from tenants and any other information requested by Lender;

(8)    upon Lender's request, a balance sheet, a statement of income and expenses for Borrower and a statement of changes in financial position of Borrower for Borrower's most recent fiscal year; and

(9)    within thirty (30) days after filing, copies of all federal and state income tax returns filed by Borrower.

(c)    Each of the statements, schedules, documents, items and reports required by Section 14(b) shall be certified to be complete and accurate by an individual having authority to bind Borrower, and shall be in such form and contain such detail as Lender may reasonably require. Lender also may require that any statements, schedules or reports be audited at Borrower's expense by independent certified public accountants acceptable to Lender.

(d)    If Borrower fails to provide in a timely manner the statements, schedules and reports required by Section 14(b), then such failure shall constitute an Event of Default and, in addition to any other remedies which may be available to Lender as a result of such Event of Default, Lender shall have the right to have Borrower's books and records audited, at Borrower's expense, by independent certified public accountants selected by Lender in order to obtain such statements, schedules and reports, and all related costs and expenses of Lender shall become immediately due and payable and shall become an additional part of the Indebtedness as provided in Section 12.

(e)    If an Event of Default has occurred and is continuing, Borrower shall deliver to Lender upon written demand all books and records relating to the Mortgaged Property or its operation.

(f)    Borrower authorizes Lender to obtain a credit report on Borrower at any time.

**DEED OF TRUST - Page 13**
ucb\1783\Deed of Trust - CA

42

15.    TAXES; OPERATING EXPENSES.

(a)    Subject to the provisions of Section 15(c) and Section 15(d), Borrower shall pay, or cause to be paid, all Taxes when due and before the addition of any interest, fine, penalty or cost for nonpayment.

(b)    Subject to the provisions of Section 15(c), Borrower shall pay the expenses of operating, managing, maintaining and repairing the Mortgaged Property (including insurance premiums, utilities, repairs and replacements) before the last date upon which each such payment may be made without any penalty or interest charge being added.

(c)    As long as no Event of Default exists and Borrower has timely delivered to Lender any bills or premium notices that it has received, Borrower shall not be obligated to pay Taxes, insurance premiums or any other individual Imposition to the extent that sufficient Imposition Deposits are held by Lender for the purpose of paying that specific Imposition. If an Event of Default exists, Lender may exercise any rights Lender may have with respect to Imposition Deposits without regard to whether Impositions are then due and payable. Lender shall have no liability to Borrower for failing to pay any Impositions to the extent that any Event of Default has occurred and is continuing, insufficient Imposition Deposits are held by Lender at the time an Imposition becomes due and payable or Borrower has failed to provide Lender with bills and premium notices as provided above.

(d)    Borrower, at its own expense, may contest by appropriate legal proceedings, conducted diligently and in good faith, the amount or validity of any Imposition other than insurance premiums, if (1) Borrower notifies Lender of the commencement or expected commencement of such proceedings, (2) the Mortgaged Property is not in danger of being sold or forfeited, (3) Borrower deposits with Lender reserves sufficient to pay the contested Imposition, if requested by Lender, and (4) Borrower furnishes whatever additional security is required in the proceedings or is reasonably requested by Lender, which may include the delivery to Lender of the reserves established by Borrower to pay the contested Imposition.

(e)    Borrower shall promptly deliver to Lender a copy of all notices of, and invoices for, Impositions, and if Borrower pays any Imposition directly, Borrower shall promptly furnish to Lender receipts evidencing such payments.

16.    LIENS; ENCUMBRANCES. Borrower acknowledges that the grant, creation or existence of any mortgage, deed of trust, deed to secure debt, security interest or other lien or encumbrance (a "Lien") on the Mortgaged Property (other than the lien of this Instrument) or on certain ownership interests in Borrower, whether voluntary, involuntary or by operation of law, and whether or not such Lien has priority over the lien of this Instrument, is a "Transfer" which constitutes an Event of Default under Section 21 of this Instrument.

17.    PRESERVATION,    MANAGEMENT    AND    MAINTENANCE    OF MORTGAGED PROPERTY. Borrower (a) shall not commit waste or permit impairment or deterioration of the Mortgaged Property, (b) shall not abandon the Mortgaged Property, (c) shall restore or repair promptly, in a good and workmanlike manner, any damaged part of the Mortgaged Property to the equivalent of its original condition, or such other condition as Lender may approve in writing, whether or not insurance proceeds or condemnation awards are available to cover any costs of such restoration or repair, (d) shall keep the Mortgaged Property in good repair, including the replacement of Personalty and Fixtures with items of equal or better function and quality, (e) shall provide for professional management of the Mortgaged Property by a property manager satisfactory to Lender under a contract approved by Lender in writing, and (f) shall give notice to Lender of and, unless otherwise directed in writing by Lender, shall appear in and defend any action

**DEED OF TRUST** - Page 14
ucb\1783\Deed of Trust - CA

or proceeding purporting to affect the Mortgaged Property, Lender's security or Lender's rights under this Instrument. Borrower shall not (and shall not permit any tenant or other person to) remove, demolish or alter the Mortgaged Property or any part of the Mortgaged Property except in connection with the replacement of tangible Personalty.

**18.    ENVIRONMENTAL HAZARDS.** Borrower shall comply with all covenants, conditions, provisions and obligations of Borrower (as Indemnitor) under the Environmental Indemnity Agreement.

**19.    PROPERTY AND LIABILITY INSURANCE.**

(a)     Borrower shall keep the Improvements insured at all times against such hazards as Lender may from time to time require, which insurance shall include but not be limited to coverage against loss by fire and allied perils, general boiler and machinery coverage, and business income coverage. Lender's insurance requirements may change from time to time throughout the term of the Indebtedness. If Lender so requires, such insurance shall also include sinkhole insurance, mine subsidence insurance, earthquake insurance, and, if the Mortgaged Property does not conform to applicable zoning or land use laws, building ordinance or law coverage. If any of the Improvements is located in an area identified by the Federal Emergency Management Agency (or any successor to that agency) as an area having special flood hazards, and if flood insurance is available in that area, Borrower shall insure such Improvements against loss by flood. All insurance required pursuant to this Section 19(a) shall be referred to as "**Hazard Insurance.**"

(b)     All premiums on insurance policies required under Section 19(a) shall be paid in the manner provided in Section 7, unless Lender has designated in writing another method of payment. All such policies shall also be in a form approved by Lender. All policies of property damage insurance shall include a non-contributing, non-reporting mortgage clause in favor of, and in a form approved by, Lender. Lender shall have the right to hold the original policies or duplicate original policies of all insurance required by Section 19(a). Borrower shall promptly deliver to Lender a copy of all renewal and other notices received by Borrower with respect to the policies and all receipts for paid premiums. At least 30 days prior to the expiration date of a policy, Borrower shall deliver to Lender the original (or a duplicate original) of a renewal policy in form satisfactory to Lender.

(c)     Borrower shall maintain at all times commercial general liability insurance, workers' compensation insurance and such other liability, errors and omissions and fidelity insurance coverages as Lender may from time to time require.

(d)     All insurance policies and renewals of insurance policies required by this Section 19 shall be in such amounts and for such periods as Lender may from time to time require, shall be in such form and contain such endorsements as Lender may from time to time require, and shall be issued by insurance companies satisfactory to Lender.

(e)     Borrower shall comply with all insurance requirements and shall not permit any condition to exist on the Mortgaged Property that would invalidate any part of any insurance coverage that this Instrument requires Borrower to maintain.

(f)     In the event of loss, Borrower shall give immediate written notice to the insurance carrier and to Lender. Borrower hereby authorizes and appoints Lender as attorney-in-fact for Borrower to make proof of loss, to adjust and compromise any claims under policies of property damage insurance, to appear in and prosecute any action arising from such property damage insurance policies, to collect and receive the proceeds of property damage insurance, and to deduct from such proceeds Lender's expenses incurred in the collection of such proceeds. This power of attorney is coupled with an interest and therefore is irrevocable. However, nothing contained in this

Section 19 shall require Lender to incur any expense or take any action. Lender may, at Lender's option, (1) hold the balance of such proceeds to be used to reimburse Borrower for the cost of restoring and repairing the Mortgaged Property to the equivalent of its original condition or to a condition approved by Lender (the "**Restoration**"), or (2) apply the balance of such proceeds to the payment of the Indebtedness, whether or not then due. To the extent Lender determines to apply insurance proceeds to Restoration, Lender shall do so in accordance with Lender's then-current policies relating to the restoration of casualty damage on similar properties.

    (g)    Lender shall not exercise its option to apply insurance proceeds to the payment of the Indebtedness if all of the following conditions are met: (1) no Event of Default (or any event which, with the giving of notice or the passage of time, or both, would constitute an Event of Default) has occurred and is continuing; (2) Lender determines, in its discretion, that there will be sufficient funds to complete the Restoration; (3) Lender determines, in its discretion, that the rental income from the Mortgaged Property after completion of the Restoration will be sufficient to meet all operating costs and other expenses, Imposition Deposits, deposits to reserves and loan repayment obligations relating to the Mortgaged Property; and (4) Lender determines, in its discretion, that the Restoration will be completed before the earlier of (A) one year before the maturity date of the Note or (B) one year after the date of the loss or casualty.

    (h)    If the Mortgaged Property is sold at a foreclosure sale or Lender acquires title to the Mortgaged Property, Lender shall automatically succeed to all rights of Borrower in and to any insurance policies and unearned insurance premiums and in and to the proceeds resulting from any damage to the Mortgaged Property prior to such sale or acquisition.

    **20.**    **CONDEMNATION.**

    (a)    Borrower shall promptly notify Lender of any action or proceeding relating to any condemnation or other taking, or conveyance in lieu thereof, of all or any part of the Mortgaged Property, whether direct or indirect (a "**Condemnation**"). Borrower shall appear in and prosecute or defend any action or proceeding relating to any Condemnation unless otherwise directed by Lender in writing. Borrower authorizes and appoints Lender as attorney-in-fact for Borrower to commence, appear in and prosecute, in Lender's or Borrower's name, any action or proceeding relating to any Condemnation and to settle or compromise any claim in connection with any Condemnation. This power of attorney is coupled with an interest and therefore is irrevocable. However, nothing contained in this Section 20 shall require Lender to incur any expense or take any action. Borrower hereby transfers and assigns to Lender all right, title and interest of Borrower in and to any award or payment with respect to (i) any Condemnation, or any conveyance in lieu of Condemnation, and (ii) any damage to the Mortgaged Property caused by governmental action that does not result in a Condemnation.

    (b)    Lender may apply such awards or proceeds, after the deduction of Lender's expenses incurred in the collection of such amounts, at Lender's option, to the restoration or repair of the Mortgaged Property or to the payment of the Indebtedness, with the balance, if any, to Borrower. Unless Lender otherwise agrees in writing, any application of any awards or proceeds to the Indebtedness shall not extend or postpone the due date of any monthly installments referred to in the Note, Section 7 of this Instrument or any Collateral Agreement, or change the amount of such installments. Borrower agrees to execute such further evidence of assignment of any awards or proceeds as Lender may require.

45

## 21.    TRANSFERS OF THE MORTGAGED PROPERTY OR INTERESTS IN BORROWER [NO RIGHT TO TRANSFER].

(a)    "**Transfer**" means (A) a sale, assignment, transfer or other disposition (whether voluntary, involuntary or by operation of law); (B) the granting, creating or attachment of a lien, encumbrance or security interest (whether voluntary, involuntary or by operation of law); (C) the issuance or other creation of an ownership interest in a legal entity, including a partnership interest, interest in a limited liability company or corporate stock; (D) the withdrawal, retirement, removal or involuntary resignation of a partner in a partnership or a member or manager in a limited liability company; or (E) the merger, dissolution, liquidation, or consolidation of a legal entity or the reconstitution of one type of legal entity into another type of legal entity. For purposes of defining the term "Transfer," the term "partnership" shall mean a general partnership, a limited partnership, a joint venture and a limited liability partnership, and the term "partner" shall mean a general partner, a limited partner and a joint venturer.

(b)    "Transfer" does not include: (i) a conveyance of the Mortgaged Property at a judicial or non-judicial foreclosure sale under this Instrument, (ii) the Mortgaged Property becoming part of a bankruptcy estate by operation of law under the United States Bankruptcy Code, or (iii) a lien against the Mortgaged Property for local taxes and/or assessments not then due and payable.

(c)    The occurrence of any of the following events shall not constitute an Event of Default under this Instrument, notwithstanding any provision of Section 21(a) to the contrary:

(i)    a Transfer to which Lender has consented;

(ii)    a Transfer that occurs by devise, descent, or by operation of law upon the death of a natural person (unless such death itself is an Event of Default under Section 22(l) of this Instrument);

(iii)    the grant of a leasehold interest approved in writing by Lender;

(iv)    a Transfer of obsolete or worn out Personalty or Fixtures that are contemporaneously replaced by items of equal or better function and quality, which are free of liens, encumbrances and security interests other than those created by the Loan Documents or consented to by Lender;

(v)    the creation of a mechanic's, materialman's, or judgment lien against the Mortgaged Property which is released of record or otherwise remedied to Lender's satisfaction within 60 days of the date of creation; and

(vi)    if Borrower is a housing cooperative, any Transfer of the shares in the housing cooperative or any assignment of the occupancy agreements or leases relating thereto by tenant shareholders of the housing cooperative.

(d)    The occurrence of any of the following Transfers shall not constitute an Event of Default under this Instrument, provided that Borrower has notified Lender in writing within 30 days following the occurrence of any of the following, and such Transfer does not constitute an Event of Default under any other Section of this Instrument:

(i)    a change of the Borrower's name, provided that UCC financing statements and/or amendments sufficient to continue the perfection of Lender's security interest have been properly filed and copies have been delivered to Lender;

(ii)    a change of the form of the Borrower not involving a transfer of the Borrower's assets and not resulting in any change in liability of any Initial Owner, provided that UCC financing statements and/or amendments sufficient to continue the perfection of Lender's security interest have been properly filed and copies have been delivered to Lender;

**DEED OF TRUST** - Page 17
ucb\1783\Deed of Trust - CA

46

(iii)   the merger of the Borrower with another entity when the Borrowing entity is the surviving entity;

(iv)   [intentionally omitted];

(v)   the grant of an easement, if before the grant Lender determines that the easement will not materially affect the operation or value of the Mortgaged Property or Lender's interest in the Mortgaged Property, and Borrower pays to Lender, upon demand, all costs and expenses, including Attorneys' Fees and Costs, incurred by Lender in connection with reviewing Borrower's request.

(e)   The occurrence of any of the following events shall constitute an Event of Default under this Instrument:

(i)   a Transfer of all or any part of the Mortgaged Property or any interest in the Mortgaged Property (including without limitation the creation or existence of any Lien as provided in Section 16 of this Instrument);

(ii)   if Borrower is a limited partnership, a Transfer of (A) any general partnership interest, or (B) limited partnership interests in Borrower that would cause the Initial Owners of Borrower to own less than a Controlling Interest of all limited partnership interests in Borrower;

(iii)   if Borrower is a general partnership or a joint venture, a Transfer of any general partnership or joint venture interest in Borrower;

(iv)   if Borrower is a limited liability company, (A) a Transfer of any membership interest in Borrower which would cause the Initial Owners to own less than a Controlling Interest of all the membership interests in Borrower, (B) a Transfer of any membership or other interest of a manager in Borrower that results in a change of manager, or (C) a change of a nonmember manager;

(v)   if Borrower is a corporation, (A) the Transfer of any voting stock in Borrower which would cause the Initial Owners to own less than a Controlling Interest of any class of voting stock in Borrower or (B) if the outstanding voting stock in Borrower is held by 100 or more shareholders, one or more transfers by a single transferor within a 12-month period affecting an aggregate of 5% or more of that stock;

(vi)   if Borrower is a trust, (A) a Transfer of any beneficial interest in Borrower which would cause the Initial Owners to own less than a Controlling Interest of all the beneficial interests in Borrower, or (B) the termination or revocation of the trust, or (C) the removal, appointment or substitution of a trustee of Borrower; and

(vii)   a Transfer of any interest in a Controlling Entity which, if such Controlling Entity were Borrower, would result in an Event of Default under any of Sections 21(e)(i) through (vi) above.

Lender shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to exercise any of its remedies with respect to an Event of Default under this Section 21.

22.   **EVENTS OF DEFAULT.**  The occurrence of any one or more of the following shall constitute an Event of Default under this Instrument:

(a)   any failure by Borrower to pay or deposit when due any amount required by the Note, this Instrument or any other Loan Document;

DEED OF TRUST - Page 18
ucb\1783\Deed of Trust - CA

H7

(b)  any failure by Borrower to maintain the insurance coverage required by Section 19;

(c)  [Intentionally Omitted.]

(d)  fraud or material misrepresentation or material omission by Borrower, any of its officers, directors, trustees, general partners or managers or any guarantor in connection with (A) the application for or creation of the Indebtedness, (B) any financial statement, rent roll, or other report or information provided to Lender during the term of the Indebtedness, or (C) any request for Lender's consent to any proposed action, including a request for disbursement of funds under any Collateral Agreement;

(e)  any Event of Default under Section 21;

(f)  the commencement of a forfeiture action or proceeding, whether civil or criminal, which, in Lender's reasonable judgment, could result in a forfeiture of the Mortgaged Property or otherwise materially impair the lien created by this Instrument or Lender's interest in the Mortgaged Property;

(g)  any failure by Borrower to perform any of its obligations under this Instrument (other than those specified in Sections 22(a) through (f)), as and when required, which continues for a period of 30 days after notice of such failure by Lender to Borrower. However, no such notice or grace period shall apply in the case of any such failure which could, in Lender's judgment, absent immediate exercise by Lender of a right or remedy under this Instrument, result in harm to Lender, impairment of the Note or this Instrument or any other security given under any other Loan Document;

(h)  any failure by Borrower to perform any of its obligations as and when required under any Loan Document other than this Instrument which continues beyond the applicable cure period, if any, specified in that Loan Document;

(i)  any exercise by the holder of any debt instrument secured by a mortgage, deed of trust or deed to secure debt on the Mortgaged Property of a right to declare all amounts due under that debt instrument immediately due and payable;

(j)  should any representation or warranty contained in this Instrument, the Borrower's Certificate, any other Loan Document, or any other document submitted by Borrower to Lender be or become false or misleading in any material respect;

(k)  Borrower makes a general assignment for the benefit of creditors, voluntarily files for bankruptcy protection under the United States Bankruptcy Code or voluntarily becomes subject to any reorganization, receivership, insolvency proceeding or other similar proceeding pursuant to any other federal or state law affecting debtor and creditor rights, or an involuntary case is commenced against Borrower by any creditor (other than Lender) of Borrower pursuant to the United States Bankruptcy Code or other federal or state law affecting debtor and creditor rights and is not dismissed or discharged within 60 days after filing; and

(l)  Borrower (if Borrower is a natural person) or any general partner or trustee or guarantor who is a natural person dies, or becomes incompetent, or purports to revoke or dispute the validity of, or liability under, any of the Loan Documents or any guaranty; provided, however, that in the event of a death, Lender, in its sole, absolute and unfettered discretion, may permit the deceased Borrower's, general partner's, or guarantor's estate or the successor trustee or beneficiaries of the trust to assume unconditionally the obligations of such deceased person under the Loan Documents and/or guaranty, in a manner satisfactory to Lender, and, in doing so, cure such Event of Default.

**DEED OF TRUST** - Page 19
ucb\1783\Deed of Trust - CA

48

23.    **REMEDIES CUMULATIVE.** Each right and remedy provided in this Instrument is distinct from all other rights or remedies under this Instrument or any other Loan Document or afforded by applicable law, and each shall be cumulative and may be exercised concurrently, independently, or successively, in any order.

24.    **FORBEARANCE.**

(a)    Lender may (but shall not be obligated to) agree with Borrower, from time to time, and without giving notice to, or obtaining the consent of, or having any effect upon the obligations of, any guarantor or other third party obligor, to take any of the following actions: extend the time for payment of all or any part of the Indebtedness; reduce the payments due under this Instrument, the Note, or any other Loan Document; release anyone liable for the payment of any amounts under this Instrument, the Note, or any other Loan Document; accept a renewal of the Note; modify the terms and time of payment of the Indebtedness; join in any extension or subordination agreement; release any Mortgaged Property; take or release other or additional security; modify the rate of interest or period of amortization of the Note or change the amount of the monthly installments payable under the Note; and otherwise modify this Instrument, the Note, or any other Loan Document.

(b)    Any forbearance by Lender in exercising any right or remedy under the Note, this Instrument, or any other Loan Document or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy. The acceptance by Lender of payment of all or any part of the Indebtedness after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of Lender's right to require prompt payment when due of all other payments on account of the Indebtedness or to exercise any remedies for any failure to make prompt payment. Enforcement by Lender of any security for the Indebtedness shall not constitute an election by Lender of remedies so as to preclude the exercise of any other right available to Lender. Lender's receipt of any awards or proceeds under Sections 19 and 20 shall not operate to cure or waive any Event of Default.

25.    **LOAN CHARGES.** If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any charge provided for in any Loan Document, whether considered separately or together with other charges levied in connection with any other Loan Document, violates that law, and Borrower is entitled to the benefit of that law, that charge is hereby reduced to the extent necessary to eliminate that violation. The amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the principal of the Indebtedness. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness which constitutes interest, as well as all other charges levied in connection with the Indebtedness which constitute interest, shall be deemed to be allocated and spread over the stated term of the Note. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Note.

26.    **WAIVER OF STATUTE OF LIMITATIONS.** Borrower hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce any Loan Document.

27.    **WAIVER OF MARSHALLING.** Notwithstanding the existence of any other security interests in the Mortgaged Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Mortgaged Property shall be subjected to the remedies provided in this Instrument, the Note, any other Loan Document or applicable law.

**DEED OF TRUST - Page 20**
ucb\1783\Deed of Trust - CA

49

Lender shall have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies. Borrower and any party who now or in the future acquires a security interest in the Mortgaged Property and who has actual or constructive notice of this Instrument waives any and all right to require the marshalling of assets or to require that any of the Mortgaged Property be sold in the inverse order of alienation or that any of the Mortgaged Property be sold in parcels or as an entirety in connection with the exercise of any of the remedies permitted by applicable law or provided in this Instrument.

28.    **FURTHER ASSURANCES.** Borrower shall execute, acknowledge, and deliver, at its sole cost and expense, all further acts, deeds, conveyances, assignments, estoppel certificates, financing statements, transfers and assurances as Lender may require from time to time in order to better assure, grant, and convey to Lender the rights intended to be granted, now or in the future, to Lender under this Instrument and the Loan Documents.

29.    **ESTOPPEL CERTIFICATE.** Within 10 days after a request from Lender, Borrower shall deliver to Lender a written statement, signed and acknowledged by Borrower, certifying to Lender or any person designated by Lender, as of the date of such statement, (i) that the Loan Documents are unmodified and in full force and effect  (or, if there have been modifications, that the Loan Documents are in full force and effect as modified and setting forth such modifications); (ii) the unpaid principal balance of the Note; (iii) the date to which interest under the Note has been paid; (iv) that Borrower is not in default in paying the Indebtedness or in performing or observing any of the covenants or agreements contained in this Instrument or any of the other Loan Documents (or, if the Borrower is in default, describing such default in reasonable detail); (v) whether or not there are then existing any setoffs or defenses known to Borrower against the enforcement of any right or remedy of Lender under the Loan Documents; and (vi) any additional facts requested by Lender.

30.    **GOVERNING LAW; CONSENT TO JURISDICTION AND VENUE.**

(a)    This Instrument, and any Loan Document which does not itself expressly identify the law that is to apply to it, shall be governed by the laws of the jurisdiction in which the Land is located (the **"Property Jurisdiction"**).

(b)    Borrower agrees that any controversy arising under or in relation to the Note, this Instrument, or any other Loan Document shall be litigated exclusively in the Property Jurisdiction. The state and federal courts and authorities with jurisdiction in the Property Jurisdiction shall have exclusive jurisdiction over all controversies which shall arise under or in relation to the Note, any security for the Indebtedness, or any other Loan Document. Borrower irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise.

31.    **NOTICE.**

(a)    All notices, demands and other communications ("**notice**") under or concerning this Instrument shall be in writing. Each notice shall be addressed to the intended recipient at its address set forth in page one of this Instrument, and shall be deemed given on the earliest to occur of (1) the date when the notice is received by the addressee; (2) the first Business Day after the notice is delivered to a recognized overnight courier service, with arrangements made for payment of charges for next Business Day delivery; or (3) the third Business Day after the notice is deposited in the United States mail with postage prepaid, certified mail, return receipt requested. As used in this Section 31, the term "Business Day" means any day other than a Saturday, a Sunday or any other day on which Lender is not open for business.

**DEED OF TRUST** - Page 21
ucb\1783\Deed of Trust - CA

50

(b)      Any party to this Instrument may change the address to which notices intended for it are to be directed by means of notice given to the other party in accordance with this Section 31. Each party agrees that it will not refuse or reject delivery of any notice given in accordance with this Section 31, that it will acknowledge, in writing, the receipt of any notice upon request by the other party and that any notice rejected or refused by it shall be deemed for purposes of this Section 31 to have been received by the rejecting party on the date so refused or rejected, as conclusively established by the records of the U.S. Postal Service or the courier service.

(c)      Any notice under the Note and any other Loan Document which does not specify how notices are to be given shall be given in accordance with this Section 31.

**32.      SALE OF NOTE; CHANGE IN SERVICER.** The Note or a partial interest in the Note (together with this Instrument and the other Loan Documents) may be sold one or more times without prior notice to Borrower. A sale may result in a change of the Loan Servicer. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given notice of the change.

**33.      [Intentionally Omitted.]**

**34.      SUCCESSORS AND ASSIGNS BOUND.** This Instrument shall bind, and the rights granted by this Instrument shall inure to, the respective successors and assigns of Lender and Borrower. However, a Transfer not permitted by Section 21 shall be an Event of Default.

**35.      JOINT AND SEVERAL LIABILITY.** If more than one person or entity signs this Instrument as Borrower, the obligations of such persons and entities under this Instrument, the Note and other Loan Documents shall be joint and several.

**36.      RELATIONSHIP OF PARTIES; NO THIRD PARTY BENEFICIARY.**

(a)      The relationship between Lender and Borrower shall be solely that of creditor and debtor, respectively, and nothing contained in this Instrument shall create any other relationship between Lender and Borrower.

(b)      No creditor of any party to this Instrument and no other person shall be a third party beneficiary of this Instrument or any other Loan Document. Without limiting the generality of the preceding sentence, (1) any arrangement (a **"Servicing Arrangement"**) between the Lender and any Loan Servicer for loss sharing or interim advancement of funds shall constitute a contractual obligation of such Loan Servicer that is independent of the obligation of Borrower for the payment of the Indebtedness, (2) Borrower shall not be a third party beneficiary of any Servicing Arrangement, and (3) no payment by the Loan Servicer under any Servicing Arrangement will reduce the amount of the Indebtedness.

**37.      SEVERABILITY; ENTIRE AGREEMENT; AMENDMENTS.** The parties intend that the provisions of this Instrument and all other Loan Documents shall be legally severable. If any term or provision of this Instrument, or any other Loan Document, to any extent, be determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Instrument or of such other Loan Document shall not be affected thereby, and each term and provision shall be valid and be enforceable to the fullest extent permitted by law. This Instrument contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

**38.      CONSTRUCTION.** The captions and headings of the sections of this Instrument are for convenience only and shall be disregarded in construing this Instrument. Any reference in this Instrument to an "Exhibit" or a "Section" shall, unless otherwise explicitly provided, be construed as referring, respectively, to an Exhibit attached to this Instrument or to a Section of this

**DEED OF TRUST** - Page 22
ucb\1783\Deed of Trust - CA

Instrument. All Exhibits attached to or referred to in this Instrument are incorporated by reference into this Instrument. Any reference in this Instrument to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Agreement includes the plural and use of the plural includes the singular. As used in this Instrument, the term "including" means "including, but not limited to."

     **39.    LOAN SERVICING.** All actions regarding the servicing of the loan evidenced by the Note, including the collection of payments, the giving and receipt of notice, inspections of the Property, inspections of books and records, and the granting of consents and approvals, may be taken by the Loan Servicer unless Borrower receives notice to the contrary. If Borrower receives conflicting notices regarding the identity of the Loan Servicer or any other subject, any such notice from Lender shall govern.

     **40.    DISCLOSURE OF INFORMATION.** Lender may furnish information regarding Borrower or the Mortgaged Property to third parties with an existing or prospective interest in the servicing, enforcement, evaluation, performance, purchase or securitization of the Indebtedness, including but not limited to trustees, master servicers, special servicers, rating agencies, and organizations maintaining databases on the underwriting and performance of similar mortgage loans. Borrower irrevocably waives any and all rights it may have under applicable law to prohibit such disclosure, including but not limited to any right of privacy.

     **41.    NO CHANGE IN FACTS OR CIRCUMSTANCES.** All information in the application for the loan submitted to Lender (the **"Loan Application"**) and in all financial statements, rent rolls, reports, certificates and other documents submitted in connection with the Loan Application are complete and accurate in all material respects. There has been no material adverse change in any fact or circumstance that would make any such information incomplete or inaccurate.

     **42.    SUBROGATION.** If, and to the extent that, the proceeds of the loan evidenced by the Note are used to pay, satisfy or discharge any obligation of Borrower for the payment of money that is secured by a pre-existing mortgage, deed of trust or other lien encumbering the Mortgaged Property (a **"Prior Lien"**), such loan proceeds shall be deemed to have been advanced by Lender at Borrower's request, and Lender shall automatically, and without further action on its part, be subrogated to the rights, including lien priority, of the owner or holder of the obligation secured by the Prior Lien, whether or not the Prior Lien is released.

     **43.    [Intentionally Omitted.]**

     **44.    ACCELERATION; REMEDIES.** If an Event of Default has occurred and is continuing, Lender, at Lender's option, may declare the Indebtedness to be immediately due and payable without further demand, and may invoke the power of sale and any other remedies permitted by California law or provided in this Instrument or in any other Loan Document. Borrower acknowledges that the power of sale granted in this Instrument may be exercised by Lender without prior judicial hearing. Lender shall be entitled to collect all costs and expenses incurred in pursuing such remedies, including attorneys' fees, costs of documentary evidence, abstracts and title reports.

     If the power of sale is invoked, Lender shall execute a written notice of the occurrence of an Event of Default and of Lender's election to cause the Mortgaged Property to be sold and shall cause the notice to be recorded in each county in which the Mortgaged Property or some part of the Mortgaged Property is located. Trustee shall give notice of default and notice of sale and shall sell the Mortgaged Property according to California law. Trustee may sell the Mortgaged Property at the time and place and under the terms designated in the notice of sale in one or more parcels and in

**DEED OF TRUST** - Page 23
ucb\1783\Deed of Trust - CA

52

such order as Trustee may determine. Trustee may postpone the sale of all or any part of the Mortgaged Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Mortgaged Property at any sale.

Trustee shall deliver to the purchaser at the sale, within a reasonable time after the sale, a deed conveying the Mortgaged Property so sold without any express or implied covenant or warranty. The recitals in Trustee's deed shall be prima facie evidence of the truth of the statements made in those recitals. Trustee shall apply the proceeds of the sale in the following order: (a) to all costs and expenses of the sale, including Trustee's fees not to exceed 5% of the gross sales price, attorneys' fees and costs of title evidence; (b) to the Indebtedness in such order as Lender, in Lender's discretion, directs; and (c) the excess, if any, to the person or persons legally entitled to the excess.

**45.    RECONVEYANCE.** Upon payment of the Indebtedness, Lender shall request Trustee to reconvey the Mortgaged Property and shall surrender this Instrument and the Note to Trustee. Trustee shall reconvey the Mortgaged Property without warranty to the person or persons legally entitled to the Mortgaged Property. Such person or persons shall pay Trustee's reasonable costs incurred in so reconveying the Mortgaged Property.

**46.    SUBSTITUTE TRUSTEE.** Lender, at Lender's option, may from time to time, by a written instrument, appoint a successor trustee, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties where the Mortgaged Property is situated, shall be conclusive proof of proper substitution of the successor trustee. The successor trustee shall, without conveyance of the Mortgaged Property, succeed to all the title, power and duties conferred upon the Trustee in this Instrument and by California law. The instrument of substitution shall contain the name of the original Lender, Trustee and Borrower under this Instrument, the book and page where this Instrument is recorded, and the name and address of the successor trustee. If notice of default has been recorded, this power of substitution cannot be exercised until after the costs, fees and expenses of the then acting Trustee have been paid to such Trustee, who shall endorse receipt of those costs, fees and expenses upon the instrument of substitution. The procedure provided for substitution of trustee in this Instrument shall govern to the exclusion of all other provisions for substitution, statutory or otherwise.

**47.    STATEMENT OF OBLIGATION.** Lender may collect a fee not to exceed the maximum allowed by applicable law for furnishing the statement of obligation as provided in Section 2943 of the Civil Code of California.

**48.    SPOUSE'S SEPARATE PROPERTY.** Each Borrower who is a married person expressly agrees that recourse may be had against his or her separate property.

**49.    FIXTURE FILING.** This Instrument is also a fixture filing under the Uniform Commercial Code of California.

**50.    ADDITIONAL PROVISION REGARDING APPLICATION OF PAYMENTS.** In addition to the provisions of Section 9, Borrower further agrees that, if Lender accepts a guaranty of only a portion of the Indebtedness, Borrower waives its right under California Civil Code Section 2822(a), to designate the portion of the Indebtedness which shall be satisfied by a guarantor's partial payment.

**51.    [Intentionally Omitted.]**

**52.    WAIVER OF MARSHALLING; OTHER WAIVERS.** To the extent permitted by law, Borrower waives (i) the benefit of all present or future laws providing for any appraisement before sale of any portion of the Mortgaged Property, (ii) all rights of redemption, valuation, appraisement, stay of execution, notice of election to mature or declare due the whole of the

**DEED OF TRUST - Page 24**
ucb\1783\Deed of Trust - CA

Indebtedness and marshalling in the event of foreclosure of the lien created by this Instrument, (iii) all rights and remedies which Borrower may have or be able to assert by reason of the laws of the State of California pertaining to the rights and remedies of sureties, (iv) the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce the Note or any other obligation secured by this Instrument, and (v) any rights, legal or equitable, to require marshalling of assets or to require upon foreclosure sales in a particular order, including any rights under California Civil Code Sections 2899 and 3433. Lender shall have the right to determine the order in which any or all of the Mortgaged Property shall be subjected to the remedies provided by this Instrument. Lender shall have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of the remedies provided by this Instrument. By signing this Instrument, Borrower does not waive its rights under Section 2924c of the California Civil Code.

53.    **INTERPRETATION.**  It is the intention of Borrower and Lender that if any provision of this Instrument or any other Loan Document is capable of two (2) constructions, one of which would render the provision void, and the other of which would render the provision valid, then the provision shall have the meaning which renders it valid. Borrower acknowledges that Lender has attempted in good faith to assure that this Instrument, the Note and all other Loan Documents are in compliance with applicable laws of the Property Jurisdiction and federal laws. Nevertheless, in the event that any provision of this Instrument, the Note or any other Loan Document is not in compliance with any such laws, then the non-complying provision shall be deemed to be deleted or modified to the extent necessary to assure legal compliance. Similarly, in the event any language or disclosure required by applicable laws of the Property Jurisdiction is not contained in the Loan Documents, then the Loan Documents shall be deemed to have been supplemented to add such language or disclosure, or, at Lender's option, Lender may provide such additional language or disclosure. In either event, such legal requirement shall thereby be satisfied and such noncompliance shall be deemed to have been cured for all purposes. Within ten (10) days after written request by Lender, Borrower agrees to execute such documentation as Lender may require to cure any legal compliance issues or deficiencies in the Loan Documents.

54.    **FUTURE ADVANCES.**  In addition to the Indebtedness, this Instrument shall (to the extent allowed by applicable law) also secure payment of the principal, interest and other charges due on all other future loans or advances made by Lender to Borrower (or any successor in interest to Borrower as the owner of all or any part of the Mortgaged Property) when the promissory note evidencing such loan or advance specifically states that it is secured by this Instrument ("**Future Advances**"), including all extensions, renewals and modifications of any such Future Advances.

55.    **AGREEMENT TO PROVIDE ADDITIONAL DOCUMENTS.**  Borrower agrees to execute and acknowledge such additional documents as may be necessary or desirable in order to carry out the intent and purpose of this Instrument and the other Loan Documents, to confirm or establish the lien hereof, or to correct any clerical errors or legal deficiencies. Without limiting the foregoing, Borrower agrees to execute a replacement Note in the event the Note is lost or destroyed and to execute a corrected and restated substitute Note to correct any clerical or other errors which may be discovered in the original Note. Failure of Borrower to comply with any request by Lender pursuant to this Section or under Section 28 above within ten (10) days after written request by Lender shall constitute a material Event of Default hereunder.

**DEED OF TRUST** - Page 25
ucb\1783\Deed of Trust - CA

54

**56.    EXECUTION IN COUNTERPARTS.** This Instrument may be executed in multiple counterparts, and the separate signature pages and notary acknowledgments may then be combined into a single original document for recordation.

**57.    PAYMENT OF CLOSING COSTS.** If for any reason the escrow or closing agent fails to reserve and pay for all of Lender's fees, legal, documentation, appraisal, title, recording and other closing costs incurred in connection with the closing and funding of the Loan, then Borrower shall pay or reimburse Lender for any such unpaid fees or costs within ten (10) days after written demand by Lender itemizing the unpaid fees and costs. Failure of Borrower to so pay or reimburse Lender for any such unpaid fees and costs within ten (10) days after written demand by Lender shall constitute an Event of Default and, without limiting any other remedies of Lender, Lender may immediately instate the Default Rate under the Note until such amounts are received by Lender.

**58.    CALIFORNIA LAW PROVISIONS RELATING TO INSURANCE COVERAGE.** Borrower acknowledges that Borrower is aware of the following provisions of Subdivision (a) of Section 2955.5 of the California Civil Code, which provides as follows:

> "No lender shall require a borrower, as a condition of receiving or maintaining a loan secured by real property, to provide hazard insurance coverage against risks to the improvements on that real property in an amount exceeding the replacement value of the improvements on the property."

**59.    WAIVER OF TRIAL BY JURY.** BORROWER AND LENDER EACH (A) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS INSTRUMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS BORROWER AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE.    THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

**ATTACHED EXHIBIT.** The following Exhibit is attached to this Instrument:

Exhibit "A"        Description of the Land

THIS DEED OF TRUST SECURES A VARIABLE RATE PROMISSORY NOTE. THIS DEED OF TRUST IS A FIRST DEED OF TRUST. NO FURTHER ENCUMBRANCES MAY BE RECORDED AGAINST THE REAL PROPERTY WITHOUT THE PRIOR WRITTEN CONSENT OF LENDER.    FAILURE TO COMPLY WITH THIS PROVISION SHALL CONSTITUTE AN EVENT OF DEFAULT AND AT THE LENDER'S OPTION THE LOAN SHALL IMMEDIATELY BECOME DUE AND PAYABLE. CONSENT TO ONE FURTHER ENCUMBRANCE SHALL NOT BE DEEMED TO BE A WAIVER OF THE RIGHT TO REQUIRE SUCH CONSENT TO FUTURE OR SUCCESSIVE ENCUMBRANCES.

[Signature Lines on Following Page]

**IN WITNESS WHEREOF**, Borrower has signed and delivered this Instrument or has caused this Instrument to be signed and delivered by its duly authorized representative.

**BORROWER:**

_____
**DEREK LEASON**

_____
**MORTEZA AGHAVALI**

**TEAM MINISTRY GROUP, LLC,**
a Nevada limited liability company

By: _____
**VERNON N. BATTLE, Managing Member**

**DEED OF TRUST** - Page 27
ucb\1783\Deed of Trust - CA

State of California                    ) ss.
County of __Los Angeles_____    )

On __December 18,_____, 2007, before me, __L. LIOU_____ _____,
Notary Public, personally appeared **DEREK LEASON**.

☐ personally known to me
☒ proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

L. LIOU
COMM. # 1459229
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
COMM. EXP. JAN. 1, 2008

Place Notary Seal Above

WITNESS my hand and official seal.

_____
Signature of Notary Public

**DEED OF TRUST** - Page 28
ucb\1783\Deed of Trust - CA

57

State of California                          ) ss.
County of __Los Angeles_____ )

On __December 18_____, 2007, before me, _____L. LIOU_____,
Notary Public, personally appeared **MORTEZA AGHAVALI,**

☐ personally known to me
☒ proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary Public

L. LIOU
COMM. # 1459229
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
COMM. EXP. JAN. 1, 2009

Place Notary Seal Above

**DEED OF TRUST - Page 29**
ucb\1783\Deed of Trust - CA

State of California            ) ss.
County of ___Los Angeles_____ )

On _December 18,_____, 2007, before me, _____L. LIOU_____,
Notary Public, personally appeared **VERNON N. BATTLE,**

☐ personally known to me
☒ proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
            Signature of Notary Public

L. LIOU
COMM. # 1459229
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
COMM. EXP. JAN. 1, 2008

Place Notary Seal Above

**DEED OF TRUST** - Page 30
ucb\1783\Deed of Trust - CA

## EXHIBIT "A"

### DESCRIPTION OF THE LAND

THE LAND REFERRED TO HEREIN IS SITUATED IN SAN BERNARDINO COUNTY, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

The North Half of Section 20, Township 10 North, Range 3 East, San Bernardino Meridian, in the County of San Bernardino, State of California, according to Official Plat thereof;

EXCEPTING therefrom that portion conveyed to the State of California in Deed recorded September 18, 1962 in Book 5768, Page 828 of Official Records.

PROPERTY ADDRESS: 72 Hacienda Road, Newberry Springs, California 92365

**ASSIGNMENT OF LEASES AND RENTS** - Page 13
ucb\1783\AssignLeases

60

# EXHIBIT "D"

61

Recorded in Official Records, County of San Bernardino    1/03/2008
8:00 AM
LJ

**LARRY WALKER**
Auditor/Controller – Recorder

783  CommonwealthLandTitle – Glendale



*Commonwealth*
*RECORDING REQUESTED BY*
*AND WHEN RECORDED MAIL TO:*

Doc#:  **2008 – 0002244**

| | Titles: 2 | Pages: 13 |
|---|---|---|
| Fees | | 56.00 |
| Taxes | | 0.00 |
| Other | | 0.00 |
| PAID | | $56.00 |

UNITED CENTRAL BANK
4555 West Walnut St.
Garland, TX 75042
Attn: Dana Ledet

Tax Parcel Number(s):  0539-031-02-0-000

50 74 87 74 - 10

Space Above for Recorder's Use

### ASSIGNMENT OF LEASES AND RENTS

### (CALIFORNIA)

THIS ASSIGNMENT OF LEASES AND RENTS (the "**Assignment**") dated as of December __18__, 2007, is made by **DEREK LEASON, a married man as his sole and separate property, as to an undivided 46.20% interest, and TEAM MINISTRY GROUP, LLC, a Nevada limited liability company, as to an undivided 25.00% interest, and MORTEZA AGHAVALI, a married man as his sole and separate property, as to an undivided 28.80% interest, all as tenants in common,** whose addresses are **72 Hacienda Road, Newberry Springs, CA 92365** (jointly and severally referred to herein in the singular as "Borrower"), as assignor, to and for the benefit of **UNITED CENTRAL BANK, a Texas Commercial Bank,** whose address is **4555 West Walnut St., Garland, TX 75042, Attn: Mohammed Younus,** as assignee ("Lender").

THIS ASSIGNMENT IS GIVEN TO LENDER in connection with the Indebtedness evidenced by Borrower's Promissory Note payable to Lender, dated as of the date of this Assignment, and maturing on **November 20, 2008,** in the principal amount of **THREE MILLION FOUR HUNDRED SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS (US $3,475,000.00),** and all renewals, extensions and modifications of the Indebtedness, the payment of all sums advanced by or on behalf of Lender to protect the security of the Security Instrument (as hereinafter defined) under Section 12 of the Security Instrument, and the performance of the covenants and agreements of Borrower contained in the Loan Documents.

Borrower is the owner of the Mortgaged Property, including the Land located in **San Bernardino County, State of California** and described in Exhibit A attached to this Assignment. Borrower represents and warrants that Borrower is lawfully seized of the Mortgaged Property and has the right, power and authority to give this Assignment, and that there are no other outstanding assignments of the Leases and Rents described herein.

**Covenants.** Borrower and Lender covenant and agree as follows:

    1.    **DEFINITIONS.** The following terms, when used in this Assignment (including when used in the above recitals), shall have the following meanings:

    (a)    "**Borrower**" means all persons or entities identified as "Borrower" in the first paragraph of this Assignment, together with their successors and assigns.

**ASSIGNMENT OF LEASES AND RENTS -** Page 1
ucb\1783\AssignLeases

62

(b)  **"Borrower Certificate"** means that certain Borrower Certificate dated the same date as this Assignment, executed by Borrower in favor of Lender.

(c)  **"Collateral Agreement"** means any separate agreement between Borrower and Lender for the purpose of establishing replacement reserves for the Mortgaged Property, establishing a fund to assure the completion of repairs or improvements specified in that agreement, or assuring reduction of the outstanding principal balance of the Indebtedness if the occupancy of or income from the Mortgaged Property does not increase to a level specified in that agreement, or any other agreement or agreements between Borrower and Lender which provide for the establishment of any other fund, reserve or account.

(d)  **"Environmental Indemnity"** means that certain Environmental Indemnity Agreement dated the same date as this Assignment, executed by Borrower, as Indemnitor, in favor of Lender, as Indemnitee.

(e)  **"Event of Default"** means the occurrence of any event listed in Section 22 of the Security Instrument.

(f)  **"Imposition Deposits"** are defined in Section 7(a) of the Security Instrument.

(g)  **"Improvements"** means the buildings, structures, improvements, and alterations now constructed or at any time in the future constructed or placed upon the Land, including any future replacements and additions.

(h)  **"Indebtedness"** means the principal of, interest at the fixed or variable rate set forth in the Note on, and all other amounts due at any time under, the Note, the Security Instrument, this Assignment or any other Loan Document, including late charges, default interest, and advances as provided in Section 12 of the Security Instrument to protect the security of the Security Instrument.

(i)  **"Land"** means the land described in Exhibit A.

(j)  **"Leases"** means all present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Mortgaged Property, or any portion of the Mortgaged Property, and all modifications, extensions or renewals.

(k)  **"Lender"** means the entity identified as "Lender" in the first paragraph of this Assignment, or any subsequent holder of the Note.

(l)  **"Loan Documents"** means the Note, the Security Agreement, this Assignment, the Borrower Certificate, the Environmental Indemnity, all guaranties, all indemnity agreements, all Collateral Agreements, all O&M Programs (as defined in the Environmental Indemnity), and any other documents now or in the future executed by Borrower, any guarantor or any other person in connection with the loan evidenced by the Note, as such documents may be amended from time to time.

(m)  **"Mortgaged Property"** shall have the meaning set forth in the Security Instrument and includes all of Borrower's present and future right, title and interest in and to the Land, Improvements, Rents and Leases.

(n)  **"Note"** means the Promissory Note described on page 1 of this Assignment, including all schedules, riders, allonges and addenda, as such Promissory Note may be amended from time to time.

(o)  **"Property Jurisdiction"** is defined in Section 9(a).

(p)  **"Rents"** means all rents, revenues and other income of the Land or the Improvements, including parking fees and vending machine income and fees and charges for other services provided at the Mortgaged Property, whether now due, past due, or to become due, and deposits forfeited by tenants.

**ASSIGNMENT OF LEASES AND RENTS** - Page 2
ucb\1783\AssignLeases

63

(q)    "**Security Instrument**" means that certain mortgage, deed of trust, or deed to secure debt of even date herewith, executed by Borrower in favor of Lender as security for the Indebtedness and constituting a first lien on the Mortgaged Property. The Security Instrument is to be recorded substantially concurrently herewith. The terms and provisions of the Security Instrument are incorporated herein by reference. Any capitalized terms not otherwise defined herein shall have the meaning defined in the Security Instrument.

(r)    "**Taxes**" means all taxes, assessments, vault rentals and other charges, if any, general, special or otherwise, including all assessments for schools, public betterments and general or local improvements, which are levied, assessed or imposed by any public authority or quasi-public authority, and which, if not paid, will become a lien, on the Land or the Improvements.

## 2.    WARRANTIES OF BORROWER.

(a)    Borrower warrants to Lender that (i) Borrower is the sole owner of the entire lessor's interest in the Leases; (ii) the Leases are valid, enforceable and in full force and effect and have not been altered, modified or amended in any manner whatsoever except as disclosed to Lender; (iii) neither the Leases nor the Rents have been assigned or otherwise pledged or hypothecated; (iv) none of the Rents have been collected for more than one (1) month in advance; (v) Borrower has full power and authority to execute and deliver this Assignment and the execution and delivery of this Assignment has been duly authorized and does not conflict with or constitute a default under any law, judicial order or other agreement affecting Borrower or the Mortgaged Property; (vi) the premises demised under the Leases have been completed and Lessees under the Leases have accepted the same and have taken possession of the same on a rent-paying basis except as explicitly identified on the certified rent roll delivered by Borrower to Lender; and (vii) there exist no offsets or defenses to the payment of any portion of the Rents.

(b)    Borrower covenants with Lender that Borrower (i) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (ii) shall promptly send to Lender copies of all notices of default which Borrower shall receive under the Leases; (iii) shall not collect any Rents more than one (1) month in advance; (iv) shall not execute any other assignment of lessor's interest in the Leases or the Rents; (v) shall execute and deliver at the request of Lender all such further assurances, confirmations and assignments in connection with the Mortgaged Property as Lender shall from time to time require; (vi) shall not enter into any new lease of the Mortgaged Property without the prior written consent of Lender, and in any event, any new Lease shall be on a form of lease approved by Lender; (vii) shall deliver to Lender, upon request, a tenant estoppel certificate and subordination, attornment and non-disturbance agreement ("SNDA") from each Lessee at the Mortgaged Property in form and substance satisfactory to Lender (provided, however, that Borrower shall not be required to deliver such certificates more frequently than two [2] times in any calendar year); and (viii) shall deliver to Lender, at Lender's request, executed copies of all Leases now existing or hereafter arising.

(c)    Borrower further covenants with Lender that, except to the extent that Borrower is acting in the ordinary course of business as a prudent operator of property similar to the Mortgaged Property, Borrower (i) shall promptly send to Lender copies of all notices of default which Borrower shall send to Lessees under the Leases or which Borrower shall receive from any Lessee under the Leases; (ii) shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the Lessees thereunder to be observed or performed, short of termination thereof; (iii) shall not alter, modify or change the terms of the Leases without the prior written consent of Lender, or cancel or terminate the Leases or accept a surrender thereof or take any other

**ASSIGNMENT OF LEASES AND RENTS** - Page 3
ucb\1783\AssignLeases

action which would effect a merger of the estates and rights of, or a termination or diminution of the obligations of, Lessees thereunder; (iv) shall not alter, modify or change the terms of any guaranty of any of the Leases or cancel or terminate any such guaranty without the prior written consent of Lender; (v) shall not consent to any assignment of or subletting under the Leases not in accordance with their terms, without the prior written consent of Lender; and (vi) shall not waive, release, reduce, discount or otherwise discharge or compromise the payment of any of the Rents to accrue under the Leases.

3.    ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.

(a)    As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all Rents. It is the intention of Borrower to establish a present, absolute and irrevocable transfer and assignment to Lender of all Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower. Promptly upon request by Lender, Borrower agrees to execute and deliver such further assignments as Lender may from time to time require. Borrower and Lender intend this assignment of Rents to be immediately effective and to constitute an absolute present assignment and not an assignment for additional security only. For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, Rents shall not be deemed to be a part of the "Mortgaged Property" as that term is defined in the Security Instrument. However, if this present, absolute and unconditional assignment of Rents is not enforceable by its terms under the laws of the Property Jurisdiction, then the Rents shall be included as a part of the Mortgaged Property and it is the intention of the Borrower that in this circumstance this Assignment and the comparable Security Instrument provisions create and perfect a lien on Rents in favor of Lender, which lien shall be effective as of the date of this Assignment. Lender may, at its option and discretion, elect to enforce this Assignment, or the comparable Security Instrument provisions, or both, and such election shall not diminish or affect Lender's available remedies under any other Loan Document provisions.

(b)    After the occurrence of an Event of Default, Borrower authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Mortgaged Property to pay all Rents to, or as directed by, Lender. However, until the occurrence of an Event of Default, Lender hereby grants to Borrower a revocable license to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender and to apply all Rents to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including Imposition Deposits, and to pay the current costs and expenses of managing, operating and maintaining the Mortgaged Property, including utilities, Taxes and insurance premiums (to the extent not included in Imposition Deposits), tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained by Borrower free and clear of, and released from, Lender's rights with respect to Rents under this Assignment. From and after the occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, or by a receiver, Borrower's license to collect Rents shall automatically terminate and Lender shall without notice be entitled to all Rents as they become due and payable, including Rents then due and unpaid. Borrower shall pay to Lender upon demand all Rents to which Lender is entitled. At any time on or after the date of Lender's demand for Rents, Lender may give, and Borrower hereby irrevocably authorizes Lender to give, notice to all tenants of the Mortgaged Property instructing them to pay all Rents to Lender, no tenant shall be obligated to inquire further as to the occurrence or continuance of an

ASSIGNMENT OF LEASES AND RENTS - Page 4
ucb\1783\AssignLeases

65

Event of Default, and no tenant shall be obligated to pay to Borrower any amounts which are actually paid to Lender in response to such a notice. Any such notice by Lender shall be delivered to each tenant personally, by mail or by delivering such demand to each rental unit. Borrower shall not interfere with and shall cooperate with Lender's collection of such Rents.

(c)      Borrower represents and warrants to Lender that Borrower has not executed any prior assignment of Rents (other than an assignment of Rents securing indebtedness that will be paid off and discharged with the proceeds of the loan evidenced by the Note), that Borrower has not performed, and Borrower covenants and agrees that it will not perform, any acts and has not executed, and shall not execute, any instrument which would prevent Lender from exercising its rights under this Section 3, and that at the time of execution of this Assignment there has been no anticipation or prepayment of any Rents for more than two months prior to the due dates of such Rents. Borrower shall not collect or accept payment of any Rents more than one (1) month prior to the due dates of such Rents.

(d)      If an Event of Default has occurred and is continuing, Lender may, regardless of the adequacy of Lender's security or the solvency of Borrower and even in the absence of waste, enter upon and take and maintain full control of the Mortgaged Property in order to perform all acts that Lender in its discretion determines to be necessary or desirable for the operation and maintenance of the Mortgaged Property, including the execution, cancellation or modification of Leases, the collection of all Rents, the making of repairs to the Mortgaged Property and the execution or termination of contracts providing for the management, operation or maintenance of the Mortgaged Property, for the purposes of enforcing the assignment of Rents pursuant to Section 3(a), protecting the Mortgaged Property or the security of this Assignment, or for such other purposes as Lender in its discretion may deem necessary or desirable. Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Assignment, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law. Lender or the receiver, as the case may be, shall be entitled to receive a reasonable fee for managing the Mortgaged Property. Immediately upon appointment of a receiver or immediately upon the Lender's entering upon and taking possession and control of the Mortgaged Property, Borrower shall surrender possession of the Mortgaged Property to Lender or the receiver, as the case may be, and shall deliver to Lender or the receiver, as the case may be, all documents, records (including computer files and other records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Mortgaged Property and all security deposits and prepaid Rents. In the event Lender takes possession and control of the Mortgaged Property, Lender may exclude Borrower and its representatives from the Mortgaged Property.    Borrower acknowledges and agrees that the exercise by Lender of any of the rights conferred under this Section 3 shall not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and Improvements.

(e)      If Lender enters the Mortgaged Property, Lender shall be liable to account only to Borrower and only for those Rents actually received. Lender shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Mortgaged

**ASSIGNMENT OF LEASES AND RENTS** - Page 5
ucb\1783\AssignLeases

Property, by reason of any act or omission of Lender under this Section 3, and Borrower hereby releases and discharges Lender from any such liability to the fullest extent permitted by law.

(f)    If the Rents are not sufficient to meet the costs of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become an additional part of the Indebtedness as provided in Section 12 of the Security Instrument.

(g)    Any entering upon and taking of control of the Mortgaged Property by Lender or the receiver, as the case may be, and any application of Rents as provided in this Assignment shall not cure or waive any Event of Default or invalidate any other right or remedy of Lender under applicable law or provided for in this Assignment or any other Loan Document.

**4.    ASSIGNMENT OF LEASES; LEASES AFFECTING THE MORTGAGED PROPERTY.**

(a)    As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all of Borrower's right, title and interest in, to and under the Leases, including Borrower's right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease. It is the intention of Borrower to establish a present, absolute and irrevocable transfer and assignment to Lender of all of Borrower's right, title and interest in, to and under the Leases. Borrower and Lender intend this assignment of the Leases to be immediately effective and to constitute an absolute present assignment and not an assignment for additional security only. For purposes of giving effect to this absolute assignment of the Leases, and for no other purpose, the Leases shall not be deemed to be a part of the "Mortgaged Property" as that term is defined in the Security Instrument. However, if this present, absolute and unconditional assignment of the Leases is not enforceable by its terms under the laws of the Property Jurisdiction, then the Leases shall be included as a part of the Mortgaged Property and it is the intention of the Borrower that in this circumstance this Assignment and the comparable Security Instrument provisions create and perfect a lien on the Leases in favor of Lender, which lien shall be effective as of the date of this Assignment. Lender may, at its option and discretion, elect to enforce this Assignment, or the comparable Security Instrument provisions, or both, and such election shall not diminish or affect Lender's available remedies under any other Loan Document provisions.

(b)    Until Lender gives notice to Borrower of Lender's exercise of its rights under this Section 4, Borrower shall have all rights, power and authority granted to Borrower under any Lease (except as otherwise limited by this Section or any other provision of this Assignment), including the right, power and authority to modify the terms of any Lease or extend or terminate any Lease. Upon the occurrence of an Event of Default, the permission given to Borrower pursuant to the preceding sentence to exercise all rights, power and authority under Leases shall automatically terminate. Borrower shall comply with and observe Borrower's obligations under all Leases, including Borrower's obligations pertaining to the maintenance and disposition of tenant security deposits.

(c)    Borrower acknowledges and agrees that the exercise by Lender, either directly or by a receiver, of any of the rights conferred under this Section 4 shall not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and the Improvements. The acceptance by Lender of the assignment of the Leases pursuant to Section 4(a) shall not at any time or in any event obligate Lender to take any action under this Assignment or to expend any money or to incur any expenses. Lender shall not be liable in any way for any injury or damage to person or property sustained by any person or persons, firm or corporation in or about the Mortgaged Property. Prior to Lender's actual entry into

ASSIGNMENT OF LEASES AND RENTS - Page 6
ucb\1783\AssignLeases

67

and taking possession of the Mortgaged Property, Lender shall not (i) be obligated to perform any of the terms, covenants and conditions contained in any Lease (or otherwise have any obligation with respect to any Lease); (ii) be obligated to appear in or defend any action or proceeding relating to the Lease or the Mortgaged Property; or (iii) be responsible for the operation, control, care, management or repair of the Mortgaged Property or any portion of the Mortgaged Property. The execution of this Assignment by Borrower shall constitute conclusive evidence that all responsibility for the operation, control, care, management and repair of the Mortgaged Property is and shall be that of Borrower, prior to such actual entry and taking of possession.

(d)    Upon delivery of notice by Lender to Borrower of Lender's exercise of Lender's rights under this Section 4 at any time after the occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, by a receiver, or by any other manner or proceeding permitted by the laws of the Property Jurisdiction, Lender immediately shall have all rights, powers and authority granted to Borrower under any Lease, including the right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease.

(e)    Borrower shall, promptly upon Lender's request, deliver to Lender an executed copy of each Lease then in effect.

(f)    Borrower further covenants with Lender that (i) all Leases shall be written on a standard form of lease that has been or will be approved in writing in advance by Lender; (ii) upon request, Borrower shall furnish Lender with executed copies of all Leases and all amendments thereto; (iii) no material changes may be made to the Lender-approved standard lease without the prior written consent of Lender; (iv) all renewals of Leases and all proposed Leases shall provide for rental rates comparable to existing local market rates and shall be arm's-length transactions; (v) all Leases shall provide that (A) they are subordinate to the Security Instrument and this Assignment and any other indebtedness now or hereafter secured by the Mortgaged Property, (B) Lessees agree to attorn to Lender (such attornment to be effective upon Lender's acquisition of title to the Mortgaged Property), (C) Lessees agree to execute such further evidences of attornment as Lender may from time to time request, (D) the attornment of Lessees shall not be terminated by foreclosure, (E) Lender may, at Lender's option, accept or reject such attornment, and (F) Lessees agree to execute and acknowledge a subordination, attornment and non-disturbance agreement in form and content acceptable to Lender, and, two times in any calendar year, as Lender may request, a certificate signed by Lessee confirming and containing such factual certifications and representations deemed appropriate by Lender; (vi) Borrower shall not grant any purchase options without the prior written approval of Lender, and (vii) all new Leases shall be subject to the prior written approval of Lender.

(g)    Borrower shall not receive or accept Rent under any Lease for more than one (1) month in advance.

5.    **REMEDIES CUMULATIVE.**  Each right and remedy provided in this Assignment is distinct from all other rights or remedies under this Assignment or any other Loan Document or afforded by applicable law, and each shall be cumulative and may be exercised concurrently, independently, or successively, in any order.

6.    **FORBEARANCE.**

(a)    Lender may (but shall not be obligated to) agree with Borrower, from time to time, and without giving notice to, or obtaining the consent of, or having any effect upon the obligations of, any guarantor or other third party obligor, to take any of the following actions:  extend the time for payment of all or any part of the Indebtedness; reduce the payments due under this Assignment,

**ASSIGNMENT OF LEASES AND RENTS** - Page 7
ucb\1783\AssignLeases



the Note, the Security Instrument or any other Loan Document; release anyone liable for the payment of any amounts under this Assignment, the Note, the Security Instrument, or any other Loan Document; accept a renewal of the Note; modify the terms and time of payment of the Indebtedness; join in any extension or subordination agreement; release any Mortgaged Property; take or release other or additional security; modify the rate of interest or period of amortization of the Note or change the amount of the monthly installments payable under the Note; and otherwise modify this Assignment, the Note, the Security Instrument, or any other Loan Document.

(b)    Any forbearance by Lender in exercising any right or remedy under the Note, this Assignment, the Security Instrument, or any other Loan Document or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy. The acceptance by Lender of payment of all or any part of the Indebtedness after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of Lender's right to require prompt payment when due of all other payments on account of the Indebtedness or to exercise any remedies for any failure to make prompt payment. Enforcement by Lender of any security for the Indebtedness shall not constitute an election by Lender of remedies so as to preclude the exercise of any other right available to Lender. Lender's receipt of any awards or proceeds under Sections 19 and 20 of the Security Instrument shall not operate to cure or waive any Event of Default.

7.    **WAIVER OF STATUTE OF LIMITATIONS.** Borrower hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Assignment or to any action brought to enforce any Loan Document.

8.    **FURTHER ASSURANCES.** Borrower shall execute, acknowledge, and deliver, at its sole cost and expense, all further acts, deeds, conveyances, assignments, estoppel certificates, financing statements, transfers and assurances as Lender may require from time to time in order to better assure, grant, and convey to Lender the rights intended to be granted, now or in the future, to Lender under this Assignment and the Loan Documents.

9.    **GOVERNING LAW; CONSENT TO JURISDICTION AND VENUE.**

(a)    This Assignment, and any Loan Document which does not itself expressly identify the law that is to apply to it, shall be governed by the laws of the jurisdiction in which the Land is located (the **"Property Jurisdiction"**).

(b)    Borrower agrees that any controversy arising under or in relation to the Note, this Assignment, the Security Instrument, or any other Loan Document shall be litigated exclusively in the Property Jurisdiction. The state and federal courts and authorities with jurisdiction in the Property Jurisdiction shall have exclusive jurisdiction over all controversies which shall arise under or in relation to the Note, any security for the Indebtedness, or any other Loan Document. Borrower irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise.

10.    **SUCCESSORS AND ASSIGNS BOUND.** This Assignment shall bind, and the rights granted by this Assignment shall inure to, the respective successors and assigns of Lender and Borrower. However, a Transfer not permitted by Section 21 of the Security Instrument shall be an Event of Default.

11.    **JOINT AND SEVERAL LIABILITY.** If more than one person or entity signs this Assignment as Borrower, the obligations of such persons and entities shall be joint and several.

12.    **SEVERABILITY; AMENDMENTS.** The invalidity or unenforceability of any provision of this Assignment shall not affect the validity or enforceability of any other provision,

ASSIGNMENT OF LEASES AND RENTS - Page 8
ucb\1783\AssignLeases

69

and all other provisions shall remain in full force and effect. This Assignment and the comparable provisions of the Security Instrument contain the entire agreement among the parties as to the rights granted and the obligations assumed in this Assignment and in the comparable provisions of the Security Instrument. This Assignment may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

13. **CONSTRUCTION.** The captions and headings of the sections of this Assignment are for convenience only and shall be disregarded in construing this Assignment. Any reference in this Assignment to an "Exhibit" or a "Section" shall, unless otherwise explicitly provided, be construed as referring, respectively, to an Exhibit attached to this Assignment or to a Section of this Assignment. All Exhibits attached to or referred to in this Assignment are incorporated by reference into this Assignment. Any reference in this Assignment to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Agreement includes the plural and use of the plural includes the singular. As used in this Assignment, the term "including" means "including, but not limited to."

14. **WAIVER OF TRIAL BY JURY. BORROWER AND LENDER EACH (A) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS ASSIGNMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS BORROWER AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.**

**ATTACHED EXHIBIT.** The following Exhibit is attached to this Assignment:

Exhibit A     Description of the Land

**IN WITNESS WHEREOF,** Borrower has signed and delivered this Assignment or has caused this Assignment to be signed and delivered by its duly authorized representative.

**BORROWER:**

**DEREK LEASON**

**MORTEZA AGHAVALI**

**TEAM MINISTRY GROUP, LLC,**
a Nevada limited liability company

By: _____
**VERNON N. BATTLE, Managing Member**

ASSIGNMENT OF LEASES AND RENTS - Page 9
ucb\1783\AssignLeases

70

State of California                    ) ss.
County of  Los Angeles                 )

On  December 18           , 2007, before me,    L. Liou                          ,
Notary Public, personally appeared **DEREK LEASON**,



☐ personally known to me
☒ proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
                    Signature of Notary Public

Place Notary Seal Above

**ASSIGNMENT OF LEASES AND RENTS - Page 10**
ucb\1783\AssignLeases

State of California
County of _____ Los Angeles _____ )  ) ss.

On __ December 18 _____, 2007, before me, _____ L. Liou _____,
Notary Public, personally appeared **MORTEZA AGHAVALI**,

☐ personally known to me
☒ proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary Public

L. LIOU
COMM. # 1459229
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
COMM. EXP. JAN. 1, 2008

Place Notary Seal Above

**ASSIGNMENT OF LEASES AND RENTS** - Page 11
ucb\l783\AssignLeases

72

State of California
County of __Los Angeles_____

) ss.
)

On __December 18_____, 2007, before me, __L. Liou_____,
Notary Public, personally appeared **VERNON N. BATTLE**,

☐ personally known to me
☒ proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary Public

L. LIOU
COMM. # 1459229
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
COMM. EXP. JAN. 1, 2008

Place Notary Seal Above

**ASSIGNMENT OF LEASES AND RENTS** - Page 12
ucb\1783\AssignLeases

73

## EXHIBIT "A"

### DESCRIPTION OF THE LAND

THE LAND REFERRED TO HEREIN IS SITUATED IN SAN BERNARDINO COUNTY, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

The North Half of Section 20, Township 10 North, Range 3 East, San Bernardino Meridian, in the County of San Bernardino, State of California, according to Official Plat thereof;

EXCEPTING therefrom that portion conveyed to the State of California in Deed recorded September 18, 1962 in Book 5768, Page 828 of Official Records.

PROPERTY ADDRESS:  72 Hacienda Road, Newberry Springs, California 92365

**ASSIGNMENT OF LEASES AND RENTS** - Page 13
ucb\1783\AssignLeases

74

# EXHIBIT "E"

75

**CONVERTED**

# U.S. Bankruptcy Court
## Central District Of California (Los Angeles)
### Bankruptcy Petition #: 2:09-bk-12291-PC

*Date filed:*   02/03/2009
*Date converted:*   04/09/2009

*Assigned to:* Peter Carroll
Chapter 7
Previous chapter 11
Voluntary
No asset

| | |
|---|---|
| *Debtor*<br>**Team Ministry Group LLC**<br>1056 E New York Dr<br>Altadena, CA 91001<br>Tax ID / EIN: 56-2580306 | represented by **Nicholas H Lambajian**<br>215 N Marengo Ave 3rd Fl<br>Pasadena, CA 91101<br>626-796-0646<br>Fax : 626-796-0627<br>Email: NickLambajian@aol.com |
| | **Warren O Hodges, Jr**<br>65 N Raymond Ave Ste 320<br>Pasadena, CA 91103<br>626 685-2550<br>*TERMINATED: 04/21/2010* |
| *Trustee*<br>**Nancy Knupfer (TR)**<br>Danning, Gill, Diamond & Kollitz<br>1171 S. Robertson Boulevard. Box 383<br>Los Angeles, CA 90035<br>(310) 893-9611 | |
| *U.S. Trustee*<br>**United States Trustee (LA)**<br>725 S Figueroa St., 26th Floor<br>Los Angeles, CA 90017 | represented by **Russell Clementson**<br>725 S Figueroa Ste 2600<br>Los Angeles, CA 90017<br>213-894-4505<br>Fax : 213-894-2603<br>Email:<br>russell.clementson@usdoj.gov |

| Filing Date | # | Docket Text |
|---|---|---|
| | | Chapter 11 Voluntary Petition. Receipt Number 0, Fee Amount $1039 Filed by Team Ministry Group LLC Chapter 11 Plan due by 6/3/2009. Disclosure |

76

| | | |
|---|---|---|
| 02/03/2009 | 1 | Statement due by 6/3/2009. Schedule A due 2/18/2009. Schedule B due 2/18/2009. Schedule D due 2/18/2009. Schedule E due 2/18/2009. Schedule F due 2/18/2009. Schedule G due 2/18/2009. Schedule H due 2/18/2009. Statement of Financial Affairs due 2/18/2009. List of Equity Security Holders due 2/18/2009. Statement - Form 22B Due: 2/18/2009. Corporate resolution authorizing filing of petitions due 2/18/2009. Exhibit A due 2/18/2009. Summary of schedules due 2/18/2009. Declaration concerning debtors schedules due 2/18/2009. Disclosure of Compensation of Attorney for Debtor due 2/18/2009. Venue Disclosure Form due 2/18/2009. Statistical Summary due 2/18/2009. Corporate Ownership Statement due by 2/18/2009. Incomplete Filings due by 2/18/2009. (Pickett, Betty) (Entered: 02/03/2009) |
| 02/03/2009 | | Receipt of Chapter 11 Filing Fee - $1039.00 by 96. Receipt Number 20051863. (admin) (Entered: 02/04/2009) |
| 02/05/2009 | 2 | BNC Certificate of Notice (RE: related document(s) 1 , Voluntary Petition (Chapter 11) filed by Debtor Team Ministry Group LLC) No. of Notices: 3. Service Date 02/05/2009. (Admin.) (Entered: 02/06/2009) |
| 02/05/2009 | 3 | BNC Certificate of Notice (RE: related document(s) 1 , Voluntary Petition (Chapter 11) filed by Debtor Team Ministry Group LLC) No. of Notices: 3. Service Date 02/05/2009. (Admin.) (Entered: 02/06/2009) |
| 02/06/2009 | 4 | Order setting scheduling and case management conference re chapter 11 case Signed on 2/6/2009. (Sumlin, Sharon E.) (Entered: 02/06/2009) |
| 02/06/2009 | | Hearing Set Status conference re Management of Chapter 11 case to be held on 4/16/2009 at 01:30 PM at Crtrm 1639, 255 E Temple St., Los Angeles, CA 90012. (Sumlin, Sharon E.) (Entered: 02/10/2009) |
| 02/10/2009 | 5 | Meeting of Creditors 341(a) meeting to be held on 3/3/2009 at 11:00 AM at RM 2610, 725 S Figueroa St., Los Angeles, CA 90017. Last day to oppose discharge or dischargeability is 5/4/2009. (Ly, Lynn) (Entered: 02/10/2009) |
| 02/12/2009 | 6 | BNC Certificate of Notice (RE: related document(s) 5 , Meeting of Creditors Chapter 11 & 12) No. of Notices: 26. Service Date 02/12/2009. (Admin.) (Entered: 02/12/2009) |
| 02/13/2009 | 7 | Notice to creditors (BNC-PDF) (Sumlin, Sharon E.) (Entered: 02/13/2009) |
| 02/15/2009 | 8 | BNC Certificate of Notice - PDF Document. (RE: related document(s) 7 , Notice to creditors (BNC-PDF)) No. of Notices: 28. Service Date 02/15/2009. (Admin.) (Entered: 02/15/2009) |
| | | Motion to Extend Deadline to File Schedules or Provide Required Information; declaration of Warren Hodges, Jr. in support thereof. Filed by Debtor, Team |

77

| | | |
|---|---|---|
| 02/18/2009 | 9 | Ministry Group LLC (Bakchellian, Mary) (Entered: 02/19/2009) |
| 02/23/2009 | 10 | ORDER approving application for extension of time to file schedules and/or plan - EXTENDED THROUGH AND INCLUDING MARCH 5, 2009. Signed on 2/23/2009. (Bakchellian, Mary) (Entered: 02/24/2009) |
| 02/24/2009 | 11 | U.S. Trustee Motion to dismiss or convert Filed by U.S. Trustee United States Trustee (LA). (Clementson, Russell) (Entered: 02/24/2009) |
| 02/25/2009 | | Hearing Set (RE: related document(s) 11 , U.S. Trustee Motion to dismiss or convert filed by U.S. Trustee United States Trustee (LA)) Hearing to be held on 4/1/2009 at 01:30 PM Crtrm 1639, 255 E Temple St., Los Angeles, CA 90012 for 11 , (Bakchellian, Mary) (Entered: 02/25/2009) |
| 03/05/2009 | 12 | Corporate resolution authorizing filing of petitions , Statement of Corporate Ownership filed. , Venue disclosure form (for Corporations and Partnerships filing a chapter 11) , Summary of Schedules , Statistical Summary of Certain Liabilities, Schedule A , Schedule B , Schedule D , Schedule E , Schedule F , Schedule G , Schedule H , Declaration concerning debtor's schedules , Statement of Financial Affairs , Disclosure of Compensation of Attorney for Debtor , Exhibit A (Corporation) , Chapter 11 Statement of Current Monthly Income (Form 22B), Declaration of non-preparation of balance sheet, operation or cash flow statement Filed by Debtor Team Ministry Group LLC (RE: related document(s) 1 Voluntary Petition (Chapter 11)). (Mendoza, Maria Patricia) (Entered: 03/09/2009) |
| 04/09/2009 | 13 | Order Converting Case to Chapter 7. Signed on 4/9/2009 (RE: related document (s) 11 Granting U.S. Trustee Motion to dismiss or convert filed by U.S. Trustee United States Trustee (LA)). (Sumlin, Sharon E.) (Entered: 04/09/2009) |
| 04/09/2009 | | Judge Samuel L. Bufford added to case. Involvement of Judge Ellen Carroll Terminated (Sumlin, Sharon E.) (Entered: 04/09/2009) |
| 04/14/2009 | 14 | Meeting of Creditors 341(a) meeting to be held on 5/8/2009 at 10:00 AM at RM 101, 725 S Figueroa St., Los Angeles, CA 90017. Proofs of Claims due by 8/6/2009. Government Proof of Claim due by 10/13/2009. (Caldway, Valecia) (Entered: 04/14/2009) |
| 04/14/2009 | 15 | Notice of appointment and acceptance of trustee Filed by Trustee Nancy Knupfer. (Knupfer, Nancy) (Entered: 04/14/2009) |
| 04/16/2009 | 16 | Notice of appointment and acceptance of trustee Filed by Trustee Nancy Knupfer. (Knupfer, Nancy) (Entered: 04/16/2009) |
| | | BNC Certificate of Service (RE: related document(s) 14 Meeting of Creditors Chapter 7 Asset) No. of Notices: 26. Service Date 04/16/2009. (Admin.) |

78

| 04/16/2009 | 17 | (Entered: 04/16/2009) |
|---|---|---|
| 05/14/2009 | 18 | Notice of continued meeting of creditors and appearance of debtor (11 USC 341 (a)) Filed by. (Knupfer, Nancy) (Entered: 05/14/2009) |
| 05/19/2009 | 19 | Proof of service, with cover sheet. Filed by Debtor Team Ministry Group LLC . (Bangle, Linda) (Entered: 05/20/2009) |
| 05/19/2009 |  | Receipt of Amendment Filing Fee - $26.00 by 91. Receipt Number 20058224. (admin) (Entered: 05/21/2009) |
| 06/18/2009 | 20 | 341 Meeting of Creditors Continued on 6/4/2009 at 03:00 PM at RM 101, 725 S Figueroa St., Los Angeles, CA 90017 (Knupfer, Nancy) (Entered: 06/18/2009) |
| 06/18/2009 | 21 | 341 Meeting of Creditors Continued on 07/02/09 at 11:00 AM at RM 101, 725 S Figueroa St., Los Angeles, CA 90017 (Knupfer, Nancy) (Entered: 06/18/2009) |
| 06/23/2009 | 22 | Notice of continued meeting of creditors and appearance of debtor (11 USC 341 (a)) Filed by. (Knupfer, Nancy) (Entered: 06/23/2009) |
| 07/06/2009 | 23 | 341 Meeting of Creditors Continued on 08/06/09 at 10:00 AM at RM 101, 725 S Figueroa St., Los Angeles, CA 90017 (Knupfer, Nancy) (Entered: 07/06/2009) |
| 07/06/2009 | 24 | Notice of continued meeting of creditors and appearance of debtor (11 USC 341 (a)) Filed by. (Knupfer, Nancy) (Entered: 07/06/2009) |
| 07/23/2009 |  | Receipt of Photocopies Fee - $8.00 by 02. Receipt Number 20062386. (admin) (Entered: 07/24/2009) |
| 08/19/2009 | 25 | Notice of Assets filed by trustee and court's notice of possible dividend. Meeting of creditors held and concluded (BNC) Filed by Trustee Nancy Knupfer (RE: related document(s) 21 341 Meeting of Creditors Continued on 07/02/09 at 11:00 AM at RM 101, 725 S Figueroa St., Los Angeles, CA 90017). Proofs of Claims due by 11/23/2009. Government Proof of Claim due by 2/15/2010. (Knupfer, Nancy) (Entered: 08/19/2009) |
| 08/21/2009 | 26 | BNC Certificate of Service (RE: related document(s) 25 Notice of Assets filed by trustee and court's notice of possible dividend. Meeting of creditors held and concluded (BNC) filed by Trustee Nancy Knupfer) No. of Notices: 31. Service Date 08/21/2009. (Admin.) (Entered: 08/21/2009) |
| 08/28/2009 |  | Receipt of Photocopies Fee - $2.00 by 13. Receipt Number 20064730. (admin) (Entered: 08/31/2009) |
|  |  | Chapter 7 Trustee's Report of No Distribution: I, Nancy Knupfer, having been |

| | | |
|---|---|---|
| 09/01/2009 | | appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 5 months. Assets Abandoned: $ 4055000.00, Assets Exempt: Not Available, Claims Scheduled: $ 6100000.00, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment: $ 6100000.00. Filed by Trustee Nancy Knupfer. (Knupfer, Nancy) (Entered: 09/01/2009) |
| 10/21/2009 | | Receipt of Motion Filing Fee - $150.00 by 13. Receipt Number 20068266. (admin) (Entered: 10/22/2009) |
| 10/21/2009 | 27 | Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 72 Hacienda Road, Newbury Springs, CA 92365 . Receipt Number 20068266, Fee Amount $150, Filed by Creditor United Central Bank (Huerta, Gabriela) Additional attachment(s) added on 10/22/2009 (Huerta, Gabriela). (Entered: 10/22/2009) |
| 10/22/2009 | | Hearing Set (RE: related document(s) 27 Motion for Relief from Stay - Real Property filed by Creditor United Central Bank) The Hearing date is set for 11/17/2009 at 09:30 AM at Crtrm 1575, 255 E Temple St., Los Angeles, CA 90012. The case judge is Samuel L. Bufford (Huerta, Gabriela) (Entered: 10/22/2009) |
| 11/03/2009 | 29 | Response to motion for order to terminate, annul, modify or condition the automatic stay and declaration(s) in support (related document(s): 27 Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 72 Hacienda Road, Newbury Springs, CA 92365 . Receipt Number 20068266, Fee Amount $150, filed by Creditor United Central Bank) Filed by Debtor Team Ministry Group LLC (Huerta, Gabriela) Additional attachment(s) added on 11/5/2009 (Huerta, Gabriela). (Entered: 11/04/2009) |
| 11/04/2009 | 28 | Order ORDER FOR APPEARANCE OF DECLARANTS TO TESTIFY AND NOTICE OF HEARING TIME CHANGE (MOVANT: United Central Bank) ;Signed on 11/4/2009 (Garcia, Elaine L.) (Entered: 11/04/2009) |
| 11/06/2009 | 30 | BNC Certificate of Service - PDF Document. (RE: related document(s) 28 Order (Generic)) No. of Notices: 6. Service Date 11/06/2009. (Admin.) (Entered: 11/06/2009) |
| | | Response to motion for order to terminate, annul, modify or condition the |

80

| | | |
|---|---|---|
| 11/10/2009 | 31 | automatic stay and declaration(s) in support (related document # 27 Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 72 Hacienda Road, Newbury Springs, CA 92365 . Receipt Number 20068266, Fee Amount $150, filed by Creditor United Central Bank) Filed by RF Properties LLC, Generation Holdings & C&K Dillon (Attachments: # 1 Part 2 of 2) (Quintanar, Laura) (Entered: 11/13/2009) |
| 11/20/2009 | | Hearing (Bk Motion) Continued (RE: related document(s) 27 MOTION FOR RELIEF FROM STAY - REAL PROPERTY filed by United Central Bank) Hearing to be held on 11/23/2009 at 02:00 PM 255 E. Temple St. Courtroom 1575 Los Angeles, CA 90012 for 27 , (Garcia, Elaine L.) (Entered: 11/20/2009) |
| 02/04/2010 | 32 | Order Denying Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF) (Related Doc # 27 ) Signed on 2/4/2010 (Garcia, Elaine L.) (Entered: 02/04/2010) |
| 02/06/2010 | 33 | BNC Certificate of Notice - PDF Document. (RE: related document(s) 32 Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF)) No. of Notices: 6. Service Date 02/06/2010. (Admin.) (Entered: 02/06/2010) |
| 04/21/2010 | 34 | Substitution of attorney Filed by Debtor Team Ministry Group LLC. (Lambajian, Nicholas) (Entered: 04/21/2010) |
| 05/27/2010 | 35 | Adversary case 2:10-ap-01919. Complaint by Newberry Investment Group, LLC , Derek Leason against Team Ministry Group, LLC . Receipt Number O, Fee Amount $250 Nature of Suit: (62 (Dischargeability - 523(a)(2), false pretenses, false representation, actual fraud)) ,(67 (Dischargeability - 523(a)(4), fraud as fiduciary, embezzlement, larceny)) ,(68 (Dischargeability - 523(a)(6), willful and malicious injury)) (Festejo, Henjie) (Entered: 05/27/2010) |
| 08/23/2010 | 36 | In accordance with the Administrative Order 10-09 dated 8/11/2010, this case is hereby reassigned from Judge Samuel L. Bufford to Judge Peter Carroll. (Hernandez, Kevin) (Entered: 08/23/2010) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/17/2010 12:54:12 | | |
| PACER Login: | jb1732 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 2:09-bk-12291-PC Fil or Ent: filed From: 1/1/2009 To: 12/17/2010 Doc From: 0 Doc To: 99999999 |

81

https://ecf.cacb.uscourts.gov/cgi-bin/DktRpt.pl?955643513079634-L_908_0-1          12/17/2010

|  |  |  | Term: included Format: html |
|---|---|---|---|
| Billable Pages: | 4 | Cost: | 0.32 |

82

# EXHIBIT "F"

83

Form B6 - Summary (12/07)                                    2007 USBC, Central District of California

# UNITED STATES BANKRUPTCY COURT
## Central District of California

| In re | Case No. |
|-------|----------|
| Team Ministry Group, LLC        Debtor | 2:09-bk-12291    (If known) |

### SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each.  Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided.  Add the amounts from Schedules A and B to determine the total amount of the debtor's assets.  Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities.  Individual debtors also must complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| | NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|---|
| A. | Real Property | Yes | 1 | $ 4 Mill | | |
| B. | Personal Property | Yes | 3 | $ 55,000 | | |
| C. | Property Claimed as Exempt | No | | | | |
| D. | Creditors Holding Secured Claims | Yes | 2 | | $ 4.3 Mill | |
| E. | Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 3 | | $ 0 | |
| F. | Creditors Holding Unsecured Nonpriority Claims | Yes | 25 | | $ 1.8 Mill | |
| G. | Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H. | Codebtors | Yes | 1 | | | |
| I. | Current Income of Individual Debtor(s) | No | | | | $ |
| J. | Current Expenditures of Individual Debtors(s) | No | | | | $ |
| | TOTAL | | 16 | $ 4,055,000 | $ 6.1 Mill | |

Form B6A (12/07)

| In re Team Ministry Group, LLC | Case No.: |
|---|---|
| Debtor. | 2:09-bk-12291 (If known) |

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a co-tenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| 72 Hacienda Road Newberry Springs, CA 92365 | 25% | | $4 Million | $3.6 Million |

| | | | Total ➤ | $4 Million | |

(Report also on Summary of Schedules.)

85

Form B6D - (12/07)                                                      2007 USBC, Central District of California

| In re | | Case No. : |
|---|---|---|
| Team Ministry Group, LLC | Debtor. | 2:09-bk-12291 (If known) |

## SCHEDULE D – CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is the creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H – Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND A ACCOUNT NUMBER (See Instructions Above) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Last four digits of ACCOUNT NO. | | | SEE ATTACHED | | | | | |
| | | | Value $ | | | | | |
| Last four digits of ACCOUNT NO. | | | | | | | | |
| | | | Value $ | | | | | |
| Last four digits of ACCOUNT NO. | | | | | | | | |
| | | | Value $ | | | | | |

_____ Continuation Sheets attached

Subtotal (Total of this page) ▶ $

Total (Use only last page) ▶ $ 4.3 million    None

(Report total also on Summary of Schedules)

(If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

86

## SCHEDULE D ATTACHMENT
### LIST OF CREDITORS HOLDING SECURED CLAIMS

| Name/Address/Phone Account Number | Co-Debtor | H/W/J/C | Date Incurred/ Consideration | Contin-gent? | Unliqui-dated? | Dis-puted? | Amount | Amount Unsecured |
|---|---|---|---|---|---|---|---|---|
| United Central Bank 4555 West Walnut Street Garland, TX 75042 | No | No | January 3, 2008 First Trust Deed and Note | No | Yes | No | @ $3,475,000 | None |
| Cal Top Realty & Investment 19871 Yorba Linda Blvd, Suite 102 Yorba Linda, CA 92886 | No | No | September 1, 2006 Second Trust Deed and Note | No | Yes | No | @ $75,000 | None |
| D. Marie Battle 1056 New York Drive Altadena, CA 91001 | No | No | March 26, 2007 Promissory Note | No | Yes | No | $750,000 | None |

Total:    $4,300,000.00

87

Form B6G - (12/07)                                                                2007 USBC, Central District of California

In re  Team Ministry Group, LLC                        Case No :
                                            Debtor      2:09-bk-12291          (If known)

## SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests.
State nature of debtor's interest in contract, i.e. "Purchaser," "Agent," etc. State whether debtor is the lessor or lessee of a lease. Provide
the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the
leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A B., a minor child, by John
Doe, guardian." Do not disclose the child's name. See: 11 U.S.C. §112 and Fed R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT, | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST. STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY. STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
| (1) First Mortgage<br><br>United Central Bank<br>4555 West Walnut Street<br>Garland, TX  75042 | First and second mortgage on property located at:<br>72 Hacienda Road<br>Newberry Springs, CA  92365 |
| Second Mortgage<br>(2) Cal Top Realty & Investment<br>19871 Yorba Linda Blvd.<br>Suite 102<br>Yorba Linda, CA  92886 | |

# EXHIBIT "G"

89

## SCHEDULE OF INTEREST ACCRUED INTEREST

| | |
|---|---|
| 4/20/09 | $19,805.54 |
| 5/20/09 | $20,267.66 |
| 6/20/09 | $20,943.24 |
| 7/20/09 | $20,267,66 |
| 8/20/09 | $20,943.24 |
| 9/20/09 | $20,943.24 |
| 10/20/09 | $20,943.24 |
| 11/20/09 | $20,943.24 |
| 12/20/09 | $20,943.24 |
| 1/20/10 | $20,943.24 |
| 2/20/10 | $20,943.24 |
| 3/20/10 | $20,943.24 |
| 4/20/10 | $20,943.24 |
| 5/20/10 | $20,943.24 |
| 6/20/10 | $20,943.24 |
| 7/20/10 | $20,943.24 |
| 8/20/10 | $20,943.24 |
| 9/20/10 | $20,943.24 |
| 10/20/10 | $20,943.24 |
| 11/20/10 | $20,943.24 |
| 12/20/10 | $20,943.24 |
| TOTAL | $437,319.18 |

90

# EXHIBIT "H"

91

**LAW OFFICES OF JAMES W. BATES**
**A PROFESSIONAL CORPORATION**
2418 Honolulu Avenue, Suite J
Montrose, California 91020
Tel: (818) 248-1911
Fax: (818) 248-4690
www.jbateslaw.com
jbates@jbateslaw.com

**VIA ELECTRONIC AND U.S. MAIL**

June 30, 2009

Alan V. Thaler, Esq.
Law Office Of Alan V. Thaler
18660 Cedar Circle
Fountain Valley, California 92708

Re:    United Central Bank
       My Client:          United Central Bank
       Your Clients:       Derek Leason and Morteza Aghavali
       Property:           72 Hacienda Road, Newbury Springs, California 92365
       Assessors Parcel No.: 0539-031-02-0-000
       Deed Of Trust:      2008-0002243
       Recording Date:     January 3, 2008

Dear Mr. Thaler:

This letter is in furtherance of our discussion at the 341a Meeting Of Creditors in the bankruptcy of Team Ministry Group, LLC.

As of this date, your clients Derek Leason and Morteza Aghavali are in default of their obligations pursuant to the Promissory Note and Deed Of Trust are in default. Monthly payments due on April 20, 2009, May 20, 2009 and June 20, 2009 have not been made.

The current outstanding balance pursuant to the Promissory Note is the amount of $3,545,271.76 calculated as follows:

       Balance             $3,474,455.36
       Accrued Interest    $    67,772.33
       Late Charges        $     3,044.07

Interest continues to accrue on the unpaid balance at the rate of $675.58 per day.

92

Alan V. Thaler, Esq.
Law Office Of Alan V. Thaler
June 30, 2009
Page 2


Upon receipt of this correspondence, please let me know if your clients will be paying the
amounts owed by them pursuant to the Promissory Note.

Sincerely,

JAMES W. BATES

cc:  United Central Bank

# EXHIBIT "I"

94

Prepared for:

United Central Bank
4555 W Walnut St
Garland, TX 75042
Attn. – Ajaz Saiyad/Special Assets



# SELF-CONTAINED
# APPRAISAL REPORT

### *267 Acres of Land -*
### *Former Water Park Site*
72 Hacienda Road
Unincorporated Area of San
Bernardino County (Newberry
Springs Area), CA 92365

CCL FILE No. 6017a
UCB No. Team Ministry Group LLC
(Loan#81122939)

Effective Date of Value
August 5, 2010

Date of Report
August 11, 2010



Prepared By:

Crest Consulting LLC
655 N. Central Avenue, 17th Floor
Glendale, CA 91203
Tel: 818.649.8456
Fax: 818.302.2065

95



CREST
C O N S U L T I N G

August 11, 2010

**Mr. Ajaz Saiyed/Special Assets**
United Central Bank
4555 W. Walnut St.
Garland, TX 75042

Reference:    **267 Acres Vacant Land – Former Water Park Site**
              72 Hacienda Road
              Unincorporated Area of San Bernardino County (Newberry Springs Area), CA 92365
              APN: 0539-031-02-0-000

To Mr. Saiyed/Special Assets:

Per the agreement as outlined in the Letter of Engagement, we are pleased to transmit this appraisal of the above referenced property in a Self-Contained report. The concluded value is based on our understanding of the subject property as represented to us by the owner, client, public records, our inspection, and other available sources. It is your responsibility to read the report and inform the appraiser(s) of any errors or omissions you are aware of prior to utilizing it.

The intended user for this report is the client noted above, its affiliates, or assigns and is for internal decision making purposes. Unauthorized use of this report for any other purposes is prohibited. Crest Consulting is not responsible for unauthorized use of this report. Release of this report to any third party without authorization from Crest Consulting LLC is expressly prohibited.

The following conclusions are premised on the Appraisers' Certification and the Assumptions and Limiting Conditions as cited in the attached report, as well as the facts and circumstances as of the valuation date. In addition, this appraisal report has been prepared in accordance with our interpretation of your institution's guidelines, Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), and the *Uniform Standards of Professional Appraisal Practice* (USPAP).

The report also complies with the Code of Professional Ethics of the Appraisal Institute. We certify that this assignment was not based on a requested minimum valuation, a specific valuation, or the approval of a loan. In addition, we have read, understood, and satisfied the Competency Provision of the USPAP.

96

All statements of fact used in the report serving as the basis of the appraisers' analyses, opinions, and conclusions, are considered to be true and correct to the best of the appraisers' knowledge and belief. We shall have no responsibility for legal matters; questions of survey; opinion of title; soil or subsoil conditions; engineering; technical matters, etc.

Based on the agreed to Scope of Work, as outlined in the report, we developed an opinion that the Market Value of the Fee Simple estate of the above property, subject to the assumptions and limiting conditions, certifications, extraordinary assumptions and hypothetical conditions, if any, and definitions, "As-Is" on August 5, 2010, was:

| As Is Market Value |
| :---: |
| One Million Eight Hundred Thousand Dollars |
| **$1,800,000** |

Thank you for the opportunity to be of service. Should you wish to discuss this report further please contact our office.

Respectfully submitted,

**Crest Consulting, LLC**


Christopher Chen
Managing Partner
CA License #: AG041127
Exp: 04/07/2011

James L. Stevens, MAI
Review Appraiser
NV License #: A.0005282-CG
Exp: 03/31/2012

# *Table of Contents*

Cover Page

Transmittal Letter

Table of Contents

Certification

Summary of Facts

SUBJECT PROPERTY ................................................................................................................. 1

INTRODUCTION ....................................................................................................................... 2

    MARKETING AND EXPOSURE PERIOD ................................................................ 7

GEOGRAPHIC DESCRIPTION................................................................................................ 10

    REGION .................................................................................................................. 10

    CITY/AREA.............................................................................................................. 15

    NEIGHBORHOOD MAP.......................................................................................... 18

MARKET OVERVIEW ............................................................................................................. 21

SITE DESCRIPTION................................................................................................................ 27

REAL ESTATE TAXES ............................................................................................................ 33

ZONING DESCRIPTION ......................................................................................................... 35

HIGHEST AND BEST USE ...................................................................................................... 38

APPROACHES TO VALUE ...................................................................................................... 41

SALES COMPARISON APPROACH......................................................................................... 43

RECONCILIATION & CONCLUSION ....................................................................................... 60

*ADDENDA* ........................................................................................................................... 62

    Assumptions and Limiting Conditions
    Professional Qualifications
    Engagement Letter

# CERTIFICATION OF THE APPRAISAL

## We certify to the best of our knowledge and belief:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is our personal, unbiased professional analyses, opinions, and conclusions.

3. We have no present or prospective interest in or bias with respect to the property that is the subject of this report and have no personal interest or bias with respect to the parties involved with this assignment.

4. Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

5. Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

6. Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice (USPAP), Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), and the requirements of the Code of Professional Ethics and the Standards of Professional Appraisal Practice of the Appraisal Institute.

7. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

8. Christopher Chen has made a personal inspection of the subject property per the agreement found in this report. James Stevens, MAI and Christopher Chen have supervised the appraisal process, made a thorough review of the work file including the finished report, recommended changes where appropriate, and concur with the analysis and value conclusions stated herein. Christopher Chen has met the minimum continuing education requirements of the Appraisal Institute. Mr. Stevens has not met the minimum continuing education requirements of the Appraisal Institute but is not required to meet the minimum continuing education requirements.

9. The undersigned has the necessary level of knowledge and experience to credibly estimate the value of the subject property, or have taken reasonable steps to achieve such competency and to provide a professional appraisal of the subject property, in accordance with the Uniform Standards of Professional Appraisal Practice.

10. The appraisers acted in an independent capacity and not as employees/partners, principals, nor agents of the client's institution.

11. Christopher Chen has met the professional license/certification requirements for real estate appraisers practicing in the State of California. He is a State Certified General Appraiser, and has been issued California License No. AG041127.

12. David Francis provided significant assistance in the preparation of this report.


Christopher Chen
Managing Partner
CA License #: AG041127

James L. Stevens, MAI
Review Appraiser
NV License #: A.0005282-CG


100